Brant, J.
This is an action arising out of the parties’ lease of residential premises. After terminating the defendants’ tenancy by a fourteen-day notice to quit for nonpayment of rent, the plaintiff-landlord, M.J. Realty Trust (the “Landlord”), filed this suit to recover the rent due under an extended term of the lease, plus interest, costs and attorney’s fees. The defendant-tenants, Eric Dinnocenzo (“Dinnocenzo”) and Cassandra Furer (“Furer”), counterclaimed for, inter alia, the Landlord’s violations of G.L.c. 186, §15B and G.L.c. 93A in handling their security deposit and last month’s rent. Following a trial without a jury, the court denied the Landlord’s claims and awarded a portion of the damages sought by the Tenants. The case is before us on the parties’ Dist./Mun. Cts. R A D. A, Rule 8C cross-appeals.
The record indicates that the parties executed a written lease of a one-bedroom apartment in Newton, Massachusetts for an eleven-month term beginning October 1, 2001 and ending August 31, 2002. The monthly rent was $1,425.00. At the commencement of the term, the Tenants paid $1,425.00 for the first month’s rent, an additional $1,425.00 as a security deposit and $500.00 toward the last month’s rent.
The lease contained an automatic extension provision which continued the lease “in full force and effect” after the initial eleven-month term for successive one-year terms beginning on September 1 and ending August 31 of every year. Either party could terminate the lease as of the last day of August in any year by giving “written notice of intention to terminate” on or before July 1 of that year. Clause 17 of the lease governing any notice given by the Tenants provided, in pertinent part:
Written notice from the Lessor to the Lessee shall be deemed to have been properly given if mailed by registered or certified mail, postage prepaid, return receipt requested to the Lessee at the address of the leased premises. ... Notwithstanding the foregoing, notice by either party to the other shall be deemed adequate if given in any other manner authorized by law [italics in original].
On June 26, 2002, Furer mailed a letter to the Landlord informing him of the Tenants’ intention to terminate the lease and vacate the apartment as of August 31, *36 2002. Furer sent the notice by first class mail rather than by certified or registered mail, return receipt requested. For unknown reasons, the Landlord never received the termination notice.
For the next month, each party acted in a manner consistent with his own understanding of the situation. Believing that the lease would renew automatically on September 1, 2002, the Landlord did nothing; the Tenants began looking for a new apartment On July 31,2002, Dinnocenzo sent a facsimile transmission to the Landlord authorizing the Landlord’s representative (s) to release information about the Tenants’ rent payment or other tenant history to any prospective landlords who inquired. The Landlord replied by leaving a message on the Tenants’ answering machine that because the Tenants had failed to give written notice of their intention to terminate by July 1,2002, the lease would automatically renew for a full one-year term beginning on September 1, 2002 and continuing to August 31, 2003. After hearing the Landlord’s telephone message that evening, Dinnocenzo sent a copy of the Tenants’ June 26,2002 termination notice to the Landlord by facsimile transmission. The Landlord received the notice on August 1,2002. By letter to the Tenants dated July 31,2002, the Landlord reiterated that the lease would automatically extend on September 1, 2002, and the Tenants would be liable for all rent due through August 31,2003 even if they vacated the premises prior to that date.
The Tenants responded by sending two checks totaling $925.00 which, when added to their $500.00 payment at the inception of the tenancy toward the last month’s rent, constituted full payment of the August, 2002 rent. Based on its assumption that the lease would continue on September 1, 2002, the Landlord did not view August as the last month of the tenancy, did not add the $500.00 to the amount sent by the Tenants, and concluded that the Tenants’ checks for $925.00 constituted an incomplete payment of the August rent On August 15, 2002, the Landlord issued to the Tenants a fourteen-day notice to quit for non-payment of $500.00 in rent. The Tenants declined to pay any additional money, and vacated the apartment on August 31,2002.
The Landlord subsequently determined that the Tenants had caused only $15.00 worth of damage to the apartment However, the Landlord retained the full amount of the security deposit, interest thereon and interest on the last month’s rent on the basis that the Tenante were liable for unpaid rent for September and each successive month of the extended term.
On September 16, 2002, the Landlord filed a summary process action against the Tenants to recover possession and unpaid rent The Tenants moved to dismiss the summary process action on the ground that possession was not at issue because they had already vacated the premises. The trial judge allowed the Tenants’ motion and ordered the Landlord to refile the suit as a civil action for breach of contract[2] After a jury-waived trial, the judge issued extensive findings of fact and rulings of law, concluding that the Landlord had no valid claim for any rente after August 31, 2002 because the Landlord’s fourteen-day notice to quit terminated the tenancy prior to the effective date of the new lease term. The judge also found that the Landlord had violated the security deposit law and awarded the Tenants the amount of the security deposit (less the $15.00 in damages caused by them), $39.19 in interest on the deposit for the eleven-month period of the tenancy, $63.00 in interest after tenancy termination, and $37.50 in treble damages for interest on the last month’s rent.
1. The Landlord’s principal contention on its appeal is that its fourteen-day notice to quit, issued before the expiration of the initial lease term, did not affect its right to recover rent for the full year of the extended term ending on August 31,2003. Preliminary to the question of the Tenants’ liability for rent through an extended term was the *37 issue of the adequacy of the Tenants’ notice to terminate the parties’ self-extending lease, which would have prevented any second term. The record supports the trial judge’s ruling that the Tenants Med to satisfy their burden of establishing at trial that they gave the required termination notice to the Landlord on or before July 1,2002.[3]
The Tenants’ use of ordinary, first class mail was not perse invalid because the lease permitted notice by “any means authorized by law.”[4] However, by sending their notice by first class mail, the Tenants “implicitly accepted the fallibility of mail delivery and the possibility that [the Landlord] may not in fact receive notice delivered by this method.” Town of Andover v. State Financial Services, Inc., 432 Mass. 571, 574-575 (2000). More significantly, unlike certified or registered mail with a return receipt requested, the Tenants’ use of ordinary mail did not generate conclusive proof of receipt by a date certain or even any “means of resolving disputes as to the fact of delivery of the notice.” Computune, Inc. v. Tocio, 44 Mass. App. Ct. 489, 493 (1998).
Defendant Furer’s testimony that she mailed a properly addressed, postage prepaid notice letter to the Landlord did constitute prima facie evidence of its receipt by the Landlord in the ordinary course of the mails, Korey v. Sheff, 3 Mass. App. Ct. 266, 268 (1975); Knight v. CNA Ins. Co., 2003 Mass. App. Div. 198, 201-202, but the Landlord introduced rebuttal testimony from its office personnel that the Tenants’ notice was never received. Moreover, there was no legal presumption that the Tenants’ notice was received by July 1,2002, the notice of termination deadline specified in the lease, or by any other specific date. Migliore v. Purity Supreme Supermarkets, Inc., 1992 Mass. App. Div. 164, 166.[5] As the trial judge noted, “[w]here, as here, the lease requires the party seeking to terminate the lease to give ‘written notice of intent by a date certain, proof of receipt is key.” See McTernan v. LeTendre, 4 Mass. App. Ct. 502, 504 n.2 (1976). That proof was never advanced.
2. Given the insufficiency of the Tenants’ evidence to satisfy their burden of proving timely and effective termination of the parties’ self-extending lease, it must be concluded that the lease would have continued for at least one additional term commencing September 1, 2002. As indicated, however, the Landlord issued a fourteen-day *38 notice to quit to the Tenants on August 15, 2002 for non-payment of rent The trial judge correctly ruled that the notice to quit effectively terminated the lease and the tenancy prior to the beginning of any second term. In cases of non-payment of rent under a written lease, G.L.C. 186, §11 provides that a “fourteen days’ notice to quit... shall be sufficient to determine the lease.” The “[tjermination of a lease ends a tenants obligation to pay rent in the absence of any provision otherwise.” Krasne v. Tedeschi, 436 Mass. 103, 109 (2002). See also Locke v. Fahey, 288 Mass. 341, 344 (1934) (absent a lease provision to the contrary, upon a “termination of the lease... any claim ... for rent thereafter accruing according to the terms of the lease [is] barred.”).
The Landlord contends that clauses 24 and 25 of the lease were “remedial covenants” which “survived the termination” of the lease, Wentworth Building Corp. v. Bernstein, 346 Mass. 770 (1963), and entitled the Landlord to damages herein. The flaw in the Landlord’s argument is that neither clause expressly permitted recovery of the full contract amount of future rent due for a lease term which never commenced. Clause 24 accorded the Landlord the right to seek damages for only “arrears of rent or [a] preceding breach” of a lease term or obligation. Clause 25(a) obligated the Tenants after termination for breach to pay a sum equal to the difference between the fair rental value of the premises during any extended lease term and the amount of rent “called for” during such period. The provision did not itself “call for” payment by the Tenants of the full amount of future rent under an extended term which, again, never commenced. Similarly, the reference in clause 25(b) to the Tenants’ indemnification for the “loss of rents” cannot be reasonably construed in the circumstances of this case as encompassing a loss of future rents for an extended term which had not yet begun at the time of lease termination.
3. The Landlord also Med to satisfy its burden as appellant of establishing any error of law in the trial courts refusal to award costs and attorney’s fees pursuant to paragraph 27 of the lease addendum, which stated: “If the Lessee defaults under the terms of this Lease, the Lessee shall be liable to the Lessor for all expenses incurred by the Lessor in connection with said default, including reasonable attorney’s fees.” The Landlord concedes on this appeal that paragraph 27 accorded it the right to an award of legal fees “for the efforts necessary to recover for the Landlord’s damages.” (Pl.’s Brief, p. 14). However, the evidence adduced at trial warranted the courfs finding of fact that the Landlord did not sustain any damages requiring the institution of suit and the incurring of attendant legal expenses. As was evident by August 31,2002, the Tenants’ prior $500.00 payment coupled with their August checks for $925.00 constituted full payment of the rent due for what became the last month of the tenancy by virtue of the landlord’s own notice to quit The minimal damage to the premises ($15.00) caused by the Tenants was more than adequately covered by the $1,425.00 security deposit held by the Landlord.
4. Finally, the record indicates that the Landlord failed, within thirty days of the termination of the tenancy, to return to the Tenants both the interest on their last month’s rent in violation of G.L.C. 186, §15B(2) (a) and the interest on their security deposit in violation of G.L.c. 186, §15B (3). The damages awarded by the trial court for these violations of the security deposit law were proper. Because the record also establishes that the Landlord failed to return the balance of the Tenants’ security deposit within the same thirty days, the Tenants were entitled under G.L.c. 186, §15B(7) to three times the amount of tbe security deposit balance, or $4,230.00, in lieu of the $1,410.00 awarded by the court.
Accordingly, the trial courfs judgment, as amended by the addition of $2,820.00 in G.L.c. 186, §15B(7) damages for the Tenants, is affirmed.
So ordered.

 The case could have proceeded as a summary process action even though possession was no longer an issue. However, nothing on this appeal turns on the transfer of the case to the civil docket, which was not opposed by either party.

 The Tenants have argued to the contrary on their cross-appeal. We note that the Tenants failed to file requests for rulings of law at the close of the evidence to raise and preserve issues of law for appeal. Mass. R. Civ. P., Rule 64A See Ducker v. Ducker, 1997 Mass. App. Div. 147, 148-149. There was no abuse of discretion in the trial judge’s refusal to accept late requests for rulings offered by the Tenants on February 4,2004, almost five months after trial. Boston Spine Clinics, Inc. v. Middlesex Ins. Co., 1999 Mass. App. Div. 295, 296; Bonasoro v. CMC Associates, Inc., 1989 Mass. App. Div. 107, 108. In the absence of requests for rulings or any dispositive motion, the scope of the Tenants’ own appeal is restricted to the issue of whether there was any clear error in the voluntary findings and rulings made by the trial judge. Fillion v. Cardinal, 2000 Mass. App. Div. 284, 286; Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96.

 The notice problem in this case resulted directly from the ambiguous language of, and practical pitfalls inherent in, the notice provision which appears in the Standard Form Apartment Lease (Self-Extending) of the Greater Boston Real Estate Board dated 1978. If the notice provision were amended to require a party to obtain a receipt for any notice delivery similar to the receipt resulting from certified or registered mail, return receipt requested or from private delivery services, disputes such as the one involved in this case would not arise and the interests of the contracting parties would be better served.

 As stated in Migliore, “[r] eceipt in ‘the ordinary course’ of the mails is not... receipt at a particular time. There is no legal presumption that a letter mailed on a given date is actually received on a specific subsequent date. It is in fact common knowledge that delays of varying lengths often occur in the course of mail delivery.” Id.