## JOHN C. TAYLOR *vs.* J.P. BEAUDRY.

No. 08-P-693.

Essex. February 9, 2009. - October 15, 2009.

Present: McHugh, Cohen, & Graham, JJ.

*Landlord and Tenant,* Security deposit, Multiple damages.

In a civil action arising from a landlord's failure to return a security deposit within thirty days after termination of a tenancy, the Housing Court judge erred in dismissing the tenant's complaint, where the landlord's return of the deposit prior to litigation, but beyond the clear deadline contained in G. L. c. 186, § 15B(6)(*e*), did not preclude application of the treble damages and attorney's fees provisions of G. L. c. 186, § 15B(7). [413-416]

Discussion of issues likely to arise on remand to the Housing Court of a civil action arising from a landlord's failure timely to return a tenant's security deposit. [416-418]

CIVIL ACTION commenced in the Northeast Division of the Housing Court Department on October 16, 2007.

Entry of dismissal was ordered by *Timothy F. Sullivan,* J.

*John C. Taylor,* pro se.

*J.P. Beaudry,* pro se.

McHugh, J. John C. Taylor (tenant) filed a complaint in the Northeast Division of the Housing Court Department to recover treble damages from his former landlord, J.P. Beaudry (landlord), for the landlord's failure to return a security deposit within thirty days as required by G. L. c. 186, § 15B(4), (6)(*e*). A judge of the Housing Court dismissed the complaint on the authority of *Castenholz* v. *Caira,* 21 Mass. App. Ct. 758 (1986), and the tenant appeals. We vacate the judgment.

*Background.* The tenant rented an apartment at 40 Fairfield Street in Lowell beginning in mid-November, 2003,[1] apparently

---

[1] The lease is not part of the record, but it appears that Kimberly Cole Taylor was a cotenant. The landlord does not contest the tenant's right to prosecute this action solely in his own name.

on written leases from month to month. When the tenancy began, the tenant paid the landlord a security deposit of $1,375. The last lease expired on August 31, 2007, and the tenant claims to have vacated the premises that day. The landlord claims that the tenant did not vacate until the following day, but that dispute is irrelevant to the outcome of our analysis.

By mail postmarked October 1, 2007, the landlord sent to the tenant a check for $871.67, also dated October 1, together with an undated letter explaining that the check covered the security deposit plus accrued interest of $109.81, minus $613.14 for cleaning and repairs to the tenant's apartment. The landlord did not sign the damage list under the pains and penalties of perjury, nor did he provide with the letter any evidence, other than his own assertions, of the estimated or actual cost of repairing the damage. See G. L. c. 186, § 15B(4)(iii).

Dissatisfied with the timing and the amount of the deposit return, the tenant filed a complaint on October 16, 2007 (see note 3, *infra*), claiming that the landlord had not returned the deposit within thirty days after the tenancy's end as required by G. L. c. 186, § 15B(6)(*e*), and that, having failed to follow the procedures set out in c. 186, § 15B(4)(iii), the landlord was not entitled to make any deductions from the deposit.[2] See G. L. c. 186, § 15B(6)(*b*). Accordingly, the tenant sought a judgment for three times the total amount of the deposit, plus interest, costs, and reasonable attorney's fees, pursuant to c. 186, § 15B(7).

At some point shortly after receiving the complaint, the landlord returned to the tenant the balance of the security deposit. The record is not entirely clear when the return occurred,[3] but even in the light most favorable to the landlord, the record is

---

[2] At oral argument, both parties acknowledged that the tenant sent the landlord a demand letter before filing the complaint. The letter was not made part of the record of the case. Although the landlord claimed here that he returned the balance of the deposit after receiving the letter and before the tenant filed the complaint, the record contains no evidence to support that claim, and the judge found otherwise.

[3] The judge originally found that the tenant filed the complaint on October 7, 2007. The docket, prima facie evidence of the facts it recites, *Commonwealth* v. *MacDonald*, 435 Mass. 1005, 1007 (2001), says that the complaint was filed on October 16, 2007, and the judge appears to have allowed the landlord's postjudgment motion to amend the findings to reflect the October 16 filing date. The landlord's answer, in which he says that the deposit had been returned in full, is dated November 16, 2007, but does not appear on the

clear that he did not return the balance within thirty days following termination of the tenancy. After returning the balance, the landlord sought dismissal of the complaint under what he claimed was the authority of *Castenholz* v. *Caira*, 21 Mass. App. Ct. 758 (1986). A hearing followed after which the judge agreed with the landlord and ordered the complaint dismissed, later denying the tenant's motion for reconsideration. The tenant appeals from the judgment of dismissal.

*Discussion.* In dismissing the tenant's complaint, the judge relied on this court's statement in *Castenholz* that when a landlord "acknowledges his error and returns the deposit, and the tenant is not forced to resort to litigation to vindicate his rights, the multiple damages and attorney's fees provisions of [G. L. c. 186, § 15B(7),] have no application."[4] *Id.* at 763. That sentence does not reach as broadly as the landlord contends.

The tenant in *Castenholz* sued his former landlords, claiming that their failure to place his security deposit in a separate escrow account within thirty days of receipt violated G. L. c. 186, § 15B(3)(*a*).[5] Under G. L. c. 186, § 15B(6)(*a*),[6] the landlords' violation of § 15B(3)(*a*) effected a forfeiture of their right to

docket until November 19. The judge found that the landlord returned the balance of the security deposit "[i]n mid-October 2007, after receiving the complaint."

[4]Explaining, the court reasoned, "Any one of the violations of duty listed in [§ 15B(6)] will entitle the tenant to immediate return of his entire deposit on request, regardless of whether the violation was innocent or wilful. *Mellor* v. *Berman*, 390 Mass. [275, 281-283 (1983)]. If the landlord refuses to acknowledge his error and return the deposit, thus forcing the tenant to employ legal process to vindicate his rights, the landlord will be liable for treble damages, interest, costs, and attorney's fees. The purpose of subsection (7) is not to pillory the landlord, but to make resort to litigation feasible for the tenants." *Castenholz*, 21 Mass. App. Ct. at 762-763.

[5]General Laws c. 186, § 15B(3)(*a*), as appearing in St. 1978, c. 553, § 2, provides that "[a]ny security deposit received by [a] lessor shall be held in a separate, interest-bearing account in a bank, located within the commonwealth under such terms as will place such deposit beyond the claim of creditors of the lessor, including a foreclosing mortgagee or trustee in bankruptcy, and as will provide for its transfer to a subsequent owner of said property. A receipt shall be given to the tenant within thirty days after such deposit is received by the lessor which receipt shall indicate the name and location of the bank in which the security deposit has been deposited and the amount and account number of said deposit. Failure to comply with this paragraph shall entitle the tenant to immediate return of the security deposit."

[6]General Laws c. 186, § 15B(6), as appearing in St. 1978, c. 553, § 2,

retain any part of the security deposit. In turn, § 15B(7)[7] provided that failure to comply with § 15B(6)(*a*) entitled the tenant to recover three times the amount of the security deposit.

The issue the court addressed in *Castenholz* arose out of the loose fit between § 15B(6)(*a*) and § 15B(7). Section 15B(6)(*a*) simply says that a landlord forfeits the right to retain the security deposit if the landlord fails to deposit it as required by § 15B(3)(*a*). Section 15B(7) says that a landlord's failure "to comply with" § 15B(6)(*a*) entitles the tenant to treble damages. The problem was that § 15B(6)(*a*), by stating no time by which the forfeited funds had to be returned to the tenant, thus established no means for determining whether the landlord's "noncompliance" triggered the treble damages provision of § 15B(7).[8]

To supply a mechanism for determining noncompliance, the *Castenholz* court construed § 15B(6)(*a*) as a provision containing two components. The first component was, quite obviously, the forfeiture provision. In the court's words, "[s]ubsection (3)(*a*) establishes the duty to place the security deposit in an escrow account. Subsection (6)(*a*) declares a forfeiture of the landlord's right to retain the security deposit if he has failed to comply with the specified duty imposed on him by subsection (3)(*a*)." *Castenholz*, 21 Mass. App. Ct. at 762. The second component focused on when the forfeiture became effective. There the court held that the tenant's demand for return of the deposit was the triggering event and that a "violation of subsection (6)(*a*) occurs if the landlord fails to return the deposit when

---

states, in relevant part: "The lessor shall forfeit his right to retain any portion of the security deposit for any reason, or, in any action by a tenant to recover a security deposit, to counterclaim for any damage to the premises if he: (*a*) fails to deposit such funds in an account as required by subsection (3)."

[7]General Laws c. 186, § 15B(7), as appearing in St. 1978, c. 553, § 2, provides that "[i]f the lessor or his agent fails to comply with clauses (*a*), (*d*), or (*e*) of subsection 6, the tenant shall be awarded damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five percent from the date when such payment became due, together with court costs and reasonable attorney's fees."

[8]Section 15B(3)(*a*) says that failure to place the security deposit in an escrow account within thirty days of receipt entitles the tenant to an "immediate" return of the deposit. As the court observed, though, § 15B(7) points at noncompliance with § 15B(6)(*a*), not § 15B(3)(*a*). *Castenholz*, 21 Mass. App. Ct. at 760, 762.

requested." *Ibid.* Finally, the court held that the treble damage provision of § 15B(7) only came into play if the landlord violated § 15B(6)(*a*) by failing to respond to the tenant's demand for return of the deposit, thereby forcing the tenant to "resort to litigation."[9] *Id.* at 763.[10]

To be sure, the opinion in *Castenholz* could be read to suggest that treble damages under § 15B(7) are unavailable anytime a landlord responds to a tenant's demand and returns a security deposit before "litigation." But § 15B(7) covers three clauses of § 15B(6) that deal with conduct the Legislature considered "particularly reprehensible." *Hampshire Village Assocs.* v. *District Ct. of Hampshire*, 381 Mass. 148, 153, cert. denied sub nom. *Ruhlander* v. *District Ct. of Hampshire*, 449 U.S. 1062 (1980), quoting from *Lindsey* v. *Normet*, 405 U.S. 56, 78 (1972). The first is § 15B(6)(*a*), the clause discussed in *Castenholz*. The second is G. L. c. 186, § 15B(6)(*d*), which declares a forfeiture if the landlord "fails to transfer [the] security deposit to his successor in interest or to otherwise comply with the provisions of [G. L. c. 186, § 15B(5),] after he has succeeded to an interest in residential real property." The third clause is § 15B(6)(*e*), the provision at issue here, which provides that a forfeiture occurs when the landlord "fails to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting therefrom any sums in accordance with the provisions of this section, together with any interest thereon, *within thirty days after*

[9]By "resort to litigation," the court meant something more than merely filing a complaint. The opinion noted that the Housing Court judge's findings did "not indicate whether the plaintiff sought a return of his deposit prior to bringing this action." *Castenholz*, 21 Mass. App. Ct. at 764. Still, it concluded that the "commencement of the action itself . . . operate[d] as a demand." *Ibid.* Because the judge made "no finding of a tender promptly thereafter" and the landlords held firm to the position that the tenant had to sue a new owner of the premises to recoup the deposit, this court found that the landlords violated § 15B(6)(*a*) and were liable for treble damages, interest, costs, and fees under § 15B(7). *Ibid.* "[W]here the landlord refuses to return the deposit on demand," § 15B(7) makes "remedy by litigation financially feasible, and thus efficacious." *Id.* at 763.

[10]Since the opinion in *Castenholz* was issued over twenty years ago, the Legislature has amended § 15B three times without changing the language the court construed in its decision. See St. 1986, c. 557, § 164; St. 1992, c. 133, § 522; St. 2004, c. 417, § 1. See also Daher & Chopp, Landlord & Tenant Law § 14:1, at 49 (3d ed. Supp. 2009).

*termination of the tenancy*" (emphasis added). While smooth application of § 15B(7) to § 15B(6)(*d*) likely requires the framework the court used in *Castenholz*, application of § 15B(7) to § 15B(6)(*e*) does not, for the latter clause contains, clearly and visibly, its own compliance deadline: thirty days after termination of the tenancy.

We think, then, that the *Castenholz* framework is inapplicable to a landlord's failure to return the tenant's security deposit within the specified thirty days. The statutory obligation to return the deposit is clear, as is the time within which the deposit must be returned. Equally unambiguous are the consequences of failing to comply with that deadline. No interpretive gloss is necessary for a smooth and certain application of the statutory principles.

Our analysis means that the case must be remanded for further proceedings in the Housing Court. Before concluding, however, we pause briefly to note two other issues that may arise upon further proceedings. First, the landlord was entitled to deduct damage repair costs from the security deposit only if he complied with G. L. c. 186, § 15B(4)(iii), as appearing in St. 1978, c. 553, § 2,[11] which requires the landlord to provide the tenant

> "within . . . thirty days [after the tenancy's termination] an itemized list of damages, sworn to . . . under pains and penalties of perjury, itemizing in precise detail the nature of the damage and of the repairs necessary to correct such damage, and written evidence, such as estimates, bills, invoices or receipts, indicating the actual or estimated cost thereof."

He did not do that[12] and, consequently, was not entitled to retain any part of the deposit. See, e.g., *Mellor* v. *Berman*, 390 Mass. 275, 276 n.4 (1983) ("The purpose of requiring specific itemization is to ensure 'that landlords do not make spurious and unfounded deductions for damage' "), quoting from *McGrath* v. *Mishara*, 386 Mass. 74, 80 (1982).

Second, the statute provides that the security deposit must be

---

[11]The landlord has not claimed he was entitled to make deductions under G. L. c. 186, § 15B(4)(i) or (ii).

[12]Even if the landlord's October 1 correspondence met the thirty-day deadline, it was unsworn and did not include the required written evidence.

returned within thirty days unless the landlord makes a valid deduction or has some other statutorily permissible reason for delay or partial return.[13] See G. L. c. 186, § 15B(4).[14] In a case like this one which involves claimed property damage, failure to return the security deposit, less any amounts that § 15B(4)(iii) permits the landlord to retain, within that period subjects the landlord to "damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled," plus interest from the date payment was due, and court costs and attorney's fees.[15]

No appellate court has expressly construed the phrase "balance thereof to which the tenant is entitled." Several constructions are possible. One is that the "balance" to be trebled is the difference between the amount the landlord actually returned to the tenant before the judgment or rightfully retained and the amount the landlord should have returned. See M.J. Realty Trust II vs. Dinnocenzo, 2005 Mass. App. Div. 35, 36, 38, S.C., 67 Mass. App. Ct. 1107 (2006). Another is that the balance to be trebled is the difference between the amount returned within thirty days and the total that should have been returned. Yet a third is that the balance calculus comes into play only when the landlord has the right to withhold some part of the security deposit, but is mistaken as to how much and timely returns the rest. In that case, the balance to be trebled would be the difference between the amount properly withheld and the amount actually withheld. If, however, the landlord has no right to retain any part of the deposit, then the amount to be trebled under this approach would be the entire amount of the deposit, and the amount actually

---

[13]The parties have not briefed the question whether a deposit is "returned" within thirty days if the landlord deposits in the mail within thirty days a personal, corporate, or other check covering the amount of the deposit. We express no view on that question.

[14]Section 15B(4) instructs in part as follows: "The lessor shall, within thirty days after the termination of occupancy under a tenancy-at-will or the end of the tenancy as specified in a valid written lease agreement, return to the tenant the security deposit or any balance thereof; provided, however, that the lessor may deduct from such security deposit for the following: . . . ."

[15]The tenant's complaint additionally sought three times the amount of the interest that the landlord reported had accrued on the interest-bearing security deposit account (i.e., three times $109.81). It is not clear whether the tenant sought this trebling on the basis of § 15B(7) or some other statutory provision. A plain reading of § 15B(7), see note 7, supra, does not support such trebling.

returned would be deducted from the trebled amount. See Carter *vs.* Seto, 2005 Mass. App. Div. 62, 63-65, 67, *S.C.*, 66 Mass. App. Ct. 1114 (2006).

The briefs the parties filed in this appeal do not discuss the manner in which the relevant phrase should be interpreted. Indeed, they do not raise the "balance" issue at all. We raise the issue on our own because there is more than a slight possibility that it will arise on remand. Having raised the issue, however, we are reluctant to decide it without any input from the parties or others, for it is an issue of first impression that may have broad ramifications. Accordingly, we invite the parties and the judge to address the issue when and if it arises on remand.

The judgment of the Housing Court dismissing the complaint is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*