JOHN C. TAYLOR *vs.* J.P. BEAUDRY.

No. 10-P-1598.

Essex. April 14, 2011. - July 9, 2012.

Present: KANTROWITZ, BROWN, & RUBIN, JJ.

*Landlord and Tenant,* Security deposit. *Collateral Estoppel. Estoppel.*

In a civil action in which a tenant claimed that a landlord had not returned a
security deposit within thirty days after the tenancy's end as required by
G. L. c. 186, § 15B(6)(*e*), a Housing Court judge erred in determining that
the tenant had not vacated the premises until a day after the lease ended,
where, in prior litigation that the landlord had initiated, a District Court
judge necessarily had decided that the tenant had vacated the premises on
time, and under principles of collateral estoppel, the landlord could not re-
litigate that question in the Housing Court; therefore, this court remanded
the matter for entry of an additional award of damages (trebled, with inter-
est), less the amount initially received by the tenant, and awarded the ten-
ant costs under G. L. c. 186, § 15B(7). [108-112] BROWN, J., dissenting.

CIVIL ACTION commenced in the Northeast Division of the
Housing Court Department on October 16, 2007.

After review by this court, the case was heard by *Timothy F.
Sullivan,* J., and a motion for reconsideration was also heard by
him.

*John C. Taylor,* pro se.

RUBIN, J. This case comes to us from the Housing Court after
remand in *Taylor* v. *Beaudry,* 75 Mass. App. Ct. 411 (2009)
(*Taylor I*). The only issue before us is whether the judge properly
calculated damages and costs under G. L. c. 186, § 15B(7). We
conclude that, because of the preclusive effect of an earlier
judgment in the District Court, the case must be remanded for
judgment in a different amount, and that the plaintiff is entitled
to costs under the statute.

I. *Background.* The tenant in this case, John Taylor, rented an
apartment in Lowell in mid-November, 2003. The tenant paid

the landlord, J.P. Beaudry, a security deposit of $ 1,375. The last lease expired on August 31, 2007. The tenant and the landlord have disputed whether, as the tenant contends, he vacated the premises that day or, as the landlord contends, the tenant did not vacate until the following day.

By mail postmarked October 1, 2007, the landlord sent to the tenant a check for $871.67, also dated October 1, together with an undated letter explaining that the check covered the security deposit plus accrued interest of $109.81, minus $613.14 for "damage that cannot be attributed to normal wear and tear" and for cleaning costs incurred as a result of an alleged violation of the lease agreement. It is uncontested that the landlord failed to comply with the terms of G. L. c. 186, § 15B(4)(iii), in that he failed both to sign the list of claimed damages under the pains and penalties of perjury and to provide the required written evidence of the estimated or actual cost of repairing the damage. Further, while we need not decide the issue, the deductions for cleaning costs incurred as a result of a breach of the lease may not be permitted by the statute which, as relevant here, provides that "[n]o deduction may be made from the security deposit for any purpose other than" "a reasonable amount necessary to repair any damage caused to the dwelling unit by the tenant or any person under the tenant's control or on the premises with the tenant's consent, reasonable wear and tear excluded." G. L. c. 186, § 15B(4)(iii), as amended by St. 1984, c. 474.

In response to a demand by the tenant, the landlord subsequently mailed the tenant the $613.14 of the deposit that he had initially failed to return. The very next day, however, the landlord initiated litigation, bringing suit in the small claims session of the Lowell Division of the District Court Department, seeking additional use and occupancy rent under G. L. c. 186, § 3, based on his claim that the tenant, who had lived in the apartment for almost four years, had vacated it one day late on September 1, 2007. The tenant subsequently filed the complaint in this matter, claiming that the landlord had not returned the deposit within thirty days after the tenancy's end as required by G. L. c. 186, § 15B(6)(*e*), and that, having failed to follow the procedures set out in c. 186, § 15B(4)(iii), the landlord was not entitled to make any deductions from the deposit. See G. L.

c. 186, § 15B(6)(*b*). Accordingly, the tenant sought a judgment for three times the total amount of the deposit, plus interest, costs, and reasonable attorney's fees, pursuant to G. L. c. 186, § 15B(7).

The landlord sought dismissal on the ground that he had paid the deposit back in full in response to the tenant's demand. In *Taylor I* we held that the cause of action under G. L. c. 186, § 15B(7), for failure to return a security deposit to a tenant as required by § 15B(6)(*e*) arises when the landlord "fails to return to the tenant the security deposit . . . within thirty days after termination of the tenancy," and that a subsequent, late payment of the security deposit by the landlord in response to a demand by the tenant does not entitle the landlord to dismissal of the tenant's complaint. *Taylor I*, 75 Mass. App. Ct. at 415-416, quoting from G. L. c. 186, § 15B(6)(*e*).[1] We also concluded that the landlord had not complied with § 15(B)(4)(iii), and that he was therefore not entitled to retain any part of the deposit, *ibid.*, and we remanded for a calculation of damages and the award of costs pursuant to the statute. The Supreme Judicial Court denied further appellate review. See *Taylor* v. *Beaudry*, 455 Mass. 1108 (2009).

II. *Remand.* On remand, the first issue the judge considered was what day the tenant vacated the premises. The judge initially found that the tenant remained in possession of the premises beyond the date of the expiration of his lease (August 31, 2007) and remained in possession of the premises at least until September 1, 2007, that the landlord's check for $871.67 was mailed on October 1, 2007, thirty days later, and that it was received by the tenant on October 2, 2007. The judge concluded that "a security deposit is properly 'returned' within the thirty days required by the statute if the landlord deposits in the mail within thirty days a check covering the amount of the deposit." On the basis of this conclusion, the judge's order trebled only

---

[1] At the time *Taylor I* was decided, the Housing Court judge had found that the landlord paid the balance in response to the complaint being filed, rather than, as the judge has now found after remand, in response to an actual demand letter. The new finding is irrelevant to the analysis in *Taylor I*, which was premised on the rule that "the commencement of the action itself . . . operate[s] as a demand." *Taylor I*, 75 Mass. App. Ct. at 415 n.9, quoting from *Castenholz* v. *Caira*, 21 Mass. App. Ct. 758, 764 (1986).

the amount that he concluded was wrongly withheld, $613.14. The judge also deducted use and occupancy rent for September 1, 2007, under G. L. c. 186, § 3, which establishes liability for rent from "tenants at sufferance," to which he added five percent interest.

In response to a motion for reconsideration, however, the judge vacated his award of use and occupancy rent for the premises on September 1, 2007, stating "the court finds that the landlord had already adjudicated the claim in Lowell District Court (Case No. 07-SC-2907) seeking one day's rent for September 1, [2007,] and that after a Small Claims trial, the court found for the tenant on the landlord's claim. Under the doctrine of res judicata, the landlord is not entitled to such an award from this court, and the tenant's Motion for Reconsideration is allowed as to said claim." Although the tenant argued that issue preclusion principles also barred the landlord's argument that the tenant had not vacated until September 1, 2007 — the basis for the claim that $871.67 of the security deposit had been returned within thirty days of the end of the tenancy — the judge left his damages award otherwise undisturbed.

In his remand order, the judge also stated that "[a]s to the tenant's recovery of court costs, it is important to point out that this case was not brought pursuant to the small claims procedure although it could have been. . . . Accordingly, the plaintiff in this case should not recover civil action costs. [G. L.] c. 218, § 25. See Shaheen v. Hershfield, 247 Mass. 543, 546-547 . . . (1924)." General Laws c. 218, § 25, as amended by St. 1975, c. 377, § 13, provides that "[i]n any civil action begun by summons and complaint which might have been begun under the [small claims] procedure, the rules for the procedure may provide, or the court may by special order direct, that the cost to be recovered by the plaintiff, if he prevails, shall be eliminated in whole or in part."

The tenant filed this appeal. The landlord has not cross-appealed, and, indeed, has declined to file a brief or otherwise participate in this litigation.

III. *Discussion.* In this appeal, the tenant argues that the judge's finding that the tenant did not vacate the premises until September 1, 2007, the finding upon which the judge's conclu-

sion is based that the check for $871.67 was mailed by the landlord within thirty days of the termination of the tenancy, is barred by principles of collateral estoppel. He is correct.

On October 11, 2007, after receiving the tenant's letter, and before the tenant brought this action, the landlord initiated litigation in the small claims session of the Lowell District Court seeking additional rent under G. L. c. 186, § 3. On December 18, 2007, that court issued judgment in favor of the tenant. In reaching the conclusion that the tenant was not on September 1, 2007, a "tenant at sufferance" under G. L. c. 186, § 3, the judge in the Lowell District Court necessarily decided that the tenant vacated the premises on or before August 31, 2007. Under basic principles of collateral estoppel, the landlord cannot relitigate that question in this Housing Court action. See *Martin* v. *Ring*, 401 Mass. 59, 61 (1987).

Consequently, on reconsideration the judge should not only have vacated the award of rent for that one day under G. L. c. 186, § 3, but, as the tenant asked, the judge should also have vacated his finding that the tenant occupied the premises on September 1, 2007, and his conclusion, following from that finding, that the $871.67 portion of the security deposit was "return[ed]" within thirty days of the termination of the tenancy. The case must thus be remanded for entry of an additional damages award of $871.67 trebled plus interest, less the amount initially received by the tenant.

The tenant also seeks reversal of that portion of the judge's order denying costs. The tenant is entitled to costs under the plain language of G. L. c. 186, § 15B(7). As he points out, had he chosen to seek damages under the small claims procedure, he would have been required to give up his right to appeal; it was the landlord who first sought damages in the small claims session and not the tenant. Whatever the scope of the discretion provided by G. L. c. 218, § 25 — and it has not been cited in an appellate decision since 1924 — it cannot be read in these circumstances to allow the trial judge to deny the costs specifically provided for by G. L. c. 186. Consequently, the judgment must also be modified on remand to add the tenant's costs.

In light of our conclusion about the preclusive effect of the District Court judgment, under the facts presented, both the

mailing and the receipt of the security deposit took place beyond the statutory thirty-day deadline. We therefore need not reach the tenant's alternative argument that the statute requires receipt, not simply mailing, of the security deposit within thirty days.[2] The meaning of the word "return" in this statute is an important question with broad implications for landlord-tenant law. While we do not decide the matter, we note that we have before us only a single pro se brief in this case, and the statutory question does not appear to be a simple one in light of possible difficulties involved in construction of the language of the statute,[3] and of its structure[4] and purpose.[5]

Nor need we address in any detail the dissent. Its essential quarrel is with our decision in *Taylor I*, where we declined to dismiss the award of damages in favor of the tenant and held that under the statute a tenant who does not receive his security

---

[2]The tenant does not challenge the method by which the judge determined under § 15B(4)(iii) the "balance [of the security deposit] to which the tenant is entitled," and thus neither we nor the dissent express any opinion on the propriety of that method. See *Taylor I*, 75 Mass. App. Ct. at 417-418 (discussing possible interpretations of the statute without deciding which resulting method of determining that balance is correct).

[3]The word "return" appears ambiguous. If I borrow my neighbor's lawn mower and give it to someone else to bring it back to him, I have not "returned" it. (Indeed, I would likely ask such a third party to "return" the item for me.) On the other hand, when a check for repayment of borrowed money is placed in the mail, one might say that the money had been "returned."

[4]With respect at least to the interest on a security deposit, where a tenancy has gone on for more than a year, G. L. c. 186, § 15B(3)(*b*), as amended by St. 1978, c. 553, § 2, explicitly provides that "in the event that the tenancy is terminated before the anniversary date of the tenancy, the tenant shall *receive* all accrued interest within thirty days of such termination" (emphasis added). This might be read to imply that the principal need not be, or it might be determined that a different rule for the principal and for the accrued interest would make no sense. To complicate matters, the statute also indicates that at the end of each year of a lease that lasts longer than a year, the landlord must "give or send" the interest to the tenant, who may deduct the interest amount from his or her rent if it is not "received" "after thirty days."

[5]If "return" includes mailing, the statute would not place the burden of the vagaries of postal delivery upon the residential landlord. On the other hand, the strictness of the statute is well known, and ensuring that a tenant actually receives a security deposit within thirty days of moving out might have been consistent with the legislative determination that failure to timely return security deposits is a serious and deeply entrenched problem warranting the unusual sanction of multiple damages. See *Mellor* v. *Berman*, 390 Mass. 275, 282 (1983).

deposit on time may seek treble damages even after receiving it late. The statute states that if a landlord does not return a security deposit within thirty days of the termination of tenancy, the aggrieved tenant is entitled to treble damages, costs, and attorney's fees. See G. L. c. 186, § 15B(6)(*e*), (7).[6] In *Taylor I* we concluded that by its "unambiguous" language the statute does not require landlords to return security deposits only when threatened with litigation. *Taylor I*, 75 Mass. App. Ct. at 416. Rather, we said that the statute requires landlords to follow its "clear" terms and return security deposits within thirty days of the termination of tenancy or risk suits like this one for treble damages. See *ibid.* The strictness of the security deposit statute's terms is well known; indeed, almost thirty years ago, the Supreme Judicial Court concluded that even "[a] finding of good faith" provided no "basis for an exception to the multiple damages provision of G. L. c. 186, § 15B(7)." *Mellor* v. *Berman*, 390 Mass. 275, 283 (1983). *Taylor I* reflects a conclusion that the Legislature thought the deterrent effect of suits such as this was necessary to ensure all landlords return security deposits on time and in full compliance with the statute. The landlord in this case, for example, could have avoided damages by complying with the statute and returning the security deposit within thirty days — sufficient time in the Legislature's judgment to examine a vacant apartment and determine if any repair is needed — either in full, or in part, accompanied by proper evidence of damage and of repair costs, if any. See G. L. c. 186, § 15B(4)(iii). The dissent's conclusion that the result in this case "advances no remedial or deterrent policy" thus amounts to a quarrel with this court's reading in *Taylor I* of the Legislature's judgment.

And, at the end of the day, the conclusions in the dissent that the judgment in this case "so unfairly punishes a party as to cause justice to miscarry," that a suit like this does no more than "run a landlord into the ground," and that a decent person would have been deterred from taking legal action had his landlord retained some of his security deposit while providing a

---

[6]While in light of our conclusion about the preclusive effect of the District Court judgment we need not decide the issue, we note that the language of § 6(*e*), under which treble damages are allowed for failure to return a security deposit within "thirty days after termination of the tenancy," is not, by its terms, applicable only to tenancies under written lease agreements.

list of damages like the one at issue here, also amount to nothing more than a quarrel with *Taylor I* and its construction of the statute. To the extent the dissent purports to base its judgment on facts, though, we note that we see no basis in the record for its assertions (a) that this lawsuit "has a vindictive character in the worst sense of that descriptive word," (b) that there was "waste caused by the tenant" (something that has not been established, that, so far as we know, has never been asserted in this proceeding, and about which we express no opinion), or (c) that the tenant was unharmed by the unsworn-to list of damages sent by the landlord. Nor is there any basis in the record before us for the conclusion that the amounts listed in the landlord's letter would have been properly deductible from the security deposit under the statute. That, again, has never been established, or even asserted before us by the landlord, and it is something about which we also express no opinion.[7]

To the extent the dissent argues not merely for affirmance, but for vacatur of the judgment in favor of the plaintiff, the landlord has not in this proceeding asked for or claimed entitlement to this (or any other further) relief. The question of the propriety of that portion of the judgment is not before us. And indeed, this court is without power to vacate the judgment in favor of the tenant because, as the dissent acknowledges, the landlord has not filed a notice of appeal. It is blackletter law that in the absence of a cross appeal an appellee may not obtain a decree more favorable than the one issued below. See, e.g., *Gray* v. *Chase*, 184 Mass. 444, 452 (1903); *Turgeon* v. *Turgeon*, 330 Mass. 402, 409 (1953).[8]

IV. *Conclusion.* The judgment is affirmed in part and reversed

---

[7]The Legislature has determined that the requirements of a sworn-to list, and, unmentioned by the dissent, that a landlord also present "written evidence, such as estimates, bills, invoices or receipts, indicating the actual or estimated cost" of the repairs for which he or she claims the right to withhold a portion of the security deposit, see G. L. c. 186, § 15B(4)(iii), are an appropriate means to "ensur[e] that landlords do not make spurious and unfounded deductions for damage." *McGrath* v. *Mishara*, 386 Mass. 74, 80 (1982).

[8]We would also independently be bound to follow *Taylor I* with respect to the question of dismissal both because it is the law of the case, *King* v. *Driscoll*, 424 Mass. 1, 7-8 (1996), and because it is stare decisis on the question whether the late payment of a security deposit requires dismissal of a suit like this under G. L. c. 186, § 15B(7). See *Horner* v. *Boston Edison Co.*, 45

in part. The tenant has requested costs in connection with this appeal. He may submit an application for costs, with supporting documentation, to this court within fourteen days of the date of rescript. See *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004). The landlord shall have fourteen days thereafter to respond.

*So ordered.*

BROWN, J. (dissenting). It is hardly credible that the Legislature intended, by passage of the Security Deposit Act (Act), to foster a cottage industry for tenants to churn a per se but nonetheless harmless infraction into a treble damages windfall; such a result advances no remedial or deterrent policy. The courts of the Commonwealth are surely "no bourse for sordid money-getting, no mart of trade or commerce." Cardozo, 2 N.Y. St. B.A. Bull. 535 (1930). In doing justice across the wide spectrum of civil disputes, it has been observed more than once that we can only "wish the needy knew how to put the law to work for them as assiduously as the greedy seem to do." *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 199, 210 (1986) (Brown, J., concurring). This is not an instance of a tenant's enforcement action, designed and pursued as a "vindicative lawsuit[]" as has been "encouraged" by the Legislature, see *Hampshire Village Assocs.* v. *District Ct. of Hampshire*, 381 Mass. 148, 151, cert. denied sub nom. *Ruhlander* v. *District Ct. of Hampshire*, 449 U.S. 1062 (1980); *Mellor* v. *Berman*, 390 Mass. 275, 281 (1983), to deter and correct wrongdoing, but rather it has a vindictive character in the worst sense of that descriptive word.[1]

It is understandable that the landlord, Beaudry, declined to join the present proceeding. He has already gone to some lengths in the Housing Court and before this court in *Taylor* v. *Beaudry*, 75 Mass. App. Ct. 411 (2009) (*Taylor I*), to oppose the tenant's

Mass. App. Ct. 139, 141 (1998) (published decisions express the opinion of the entire court and are binding upon subsequent panels).

[1]The tenant's conversant knowledge of the Act was evident in his successful pro se prosecution of a prior appeal in *Taylor* v. *Burke*, 69 Mass. App. Ct. 77 (2007), involving the intricacies of the Act's custodial requirements for a security deposit. The tenant had there sued a different landlord, again seeking treble damages under the Act.

claims, and no doubt has incurred considerable expense in doing so. The Act is not designed to run a landlord into the ground in defending against a tenant's efforts to assert an untenable treble damages claim. Contrary to the Legislature's intent, the prolonged litigation under the Act here has been to add (not remove) the economic disincentives for the parties to prosecute, or, in this case, defend against a small dollar amount consumer action. "In this court as an appellate tribunal an award of damages must stand unless to make it or to permit it to stand was an abuse of discretion on the part of the court below, amounting to an error of law." *Mirageas* v. *Massachusetts Bay Transp. Authy.*, 391 Mass. 815, 822 (1984), quoting from *Bartley* v. *Phillips*, 317 Mass. 35, 43 (1944).

On the record before this court, the damages award for the tenant constitutes an error of law. I believe that to allow the damages judgment to stand, despite the absence of a cross appeal, would amount to a miscarriage of justice. I am not prepared to ignore this court's role as an appellate tribunal to correct, where necessary, an entirely erroneous judgment that so unfairly punishes a party as to cause justice to miscarry.[2]

*Findings.* a. *Tenancy and holdover.* The tenant paid a security deposit of $1,375, equal to one month's rent, to the landlord in November of 2003, in connection with a series of short-term tenancies. The last tenancy commenced on August 1, 2007, and terminated on August 31, 2007, the term having been memorialized in a written lease contract dated July 29, 2007, by and between the parties.

The tenant failed to move out and surrender possession of the leased premises on August 31, 2007, as he was obliged to do. As of September 1, the tenant had not removed his belongings from the premises.[3] His vehicle remained parked in close vicin-

---

[2] I reach this result with some chagrin given this court's prior opinion in *Taylor I*, *supra*. The full court in *Taylor I*, however, did not have the benefit of the detailed findings of fact issued by the Housing Court judge, who heard the case anew on remand from this court. Only with the benefit of the factual findings can the rather dim pleadings, especially the tenant's complaint, be adjudged for what they are: a misguided prosecutorial effort by a residential tenant to seek damages in an instance where none were warranted. See generally Ward, Massachusetts Landlord-Tenant Practice: Law and Forms §§ 7(a) & 9(e) (2011).

[3] On this point, the landlord had so testified and had introduced photographic

ity to the building. The tenant did not return the keys to the landlord. The judge found there was "no evidence of the tenant ever having requested the return of his security deposit in August 2007 or September 2007 as he might have done simultaneously with the removal of all of his belongings and the return of his house keys." Nor did he leave the premises in good condition, exclusive of ordinary wear and tear.

b. *Deposit monies returned.* Details of waste caused by the tenant were set forth in a letter that the landlord sent by mail on October 1, 2007, together with a check in the amount of $871.67. The tenant admittedly received that payment the next day and accepted the same. Nonetheless, he sent off a prompt reply by a letter mailed on October 9, 2007, to the landlord, making a demand for payment of treble damages in the amount of $3,582.76. (He has not included a copy of his demand letter in the record of either of his two appeals.)

Having received the demand on October 10, 2007, the landlord that same day returned to the tenant by mail the deposit remainder, enclosing a $613.14 check, monies that had been withheld due to waste and related repairs.[4] The tenant indorsed and deposited

---

evidence. The Housing Court judge credited the landlord's version of the events, and found the tenant's contrary account not credible.

[4]In his own appellate brief filed in *Taylor I*, the tenant made a point of mentioning that his former landlord had "claim[ed] protection under *Castenholz* v. *Caira*, 21 Mass. App. Ct. 758 (1986)." That case provides:

> "Section 15B . . . is not a minefield of potential multiple penalties for a landlord who makes an innocent mistake. Any one of the violations of duty listed in subsection (6) will entitle the tenant to immediate return of his entire deposit on request, regardless of whether the violation was innocent or wilful. If the landlord refuses to acknowledge his error and return the deposit, thus forcing the tenant to employ legal process to vindicate his rights, the landlord will be liable for treble damages, interest, costs, and attorney's fees." (Citation omitted.)

*Id.* at 762-763.

*Taylor I* criticized the *Castenholz* rationale. I need not enter into a retroactivity inquiry. *Taylor I* did not announce a new rule but rather construed certain provisions of the Act. No analysis of retroactive or prospective effect need be considered because those provisions have had the same meaning since being enacted. Cf. *McIntire, petitioner*, 458 Mass. 257, 261 (2010), cert. denied, 131 S. Ct. 2909 (2011). That said, it is not immaterial that the landlord here is said to have acted, at least in part, in reliance on *Castenholz*. It does bear some emphasis that, as of October, 2007, when the conduct at issue here

the check. This was day thirty-nine (39) from the end of his occupancy.

c. *Complaint.* Six days later, on October 16, 2007, the tenant commenced the underlying action in the Housing Court. He alleged he was owed "$109.81 in interest on the security deposit and last months rent."[5] He requested the judge to treble the $1,375 deposit and the $109.81 interest, and award that sum — $4,754.43 — with costs and attorney's fees. The judge (who later heard the case on remand) originally dismissed the complaint. In *Taylor I, supra,* this court vacated the dismissal and remanded the case, which led to the hearing and the judge's findings and ruling summarized herein.

*Trial judge's rulings.* On remand, the judge ruled the landlord had timely returned the $871.67 deposit monies, doing so by mail on October 1, precisely thirty days from September 1, 2007, the earliest date when the tenant's occupancy could have ended. As for the $613.14 remainder, the judge ruled the landlord failed timely to return that sum in that he mailed it to the tenant on October 10, 2007, nine days too late. The judge ordered the

---

occurred, the holding in *Castenholz* had not been limited, altered, or otherwise refined by a reported opinion of the Supreme Judicial Court or this court. In short, *Castenholz* defined certain aspects of the Act, and it has been part of our residential landlord and tenant jurisprudence now for more than twenty years. In the interim, the Legislature has amended the Act on more than one occasion (see St. 1986, c. 557, § 164; St. 1992, c. 133, § 522; St. 2004, c. 417, § 1) but has not seen fit to change the Act to alter the interpretation given it by *Castenholz.* Because the design of the Act bears an obvious affinity to proceedings in equity, the landlord's reliance on extant governing case law interpreting the Act is not without some significance. In a recent opinion, albeit involving a common-law rule, this point was made clear in *Papadopoulos* v. *Target Corp.,* 457 Mass. 368, 385 (2010): "[C]hanges to the common law that have the potential to expand tort liability should be limited to prospective application only where it is likely that . . . [conduct has followed] in substantial reliance on the previously existing common law." The same is true here as the landlord acted in reliance with *Castenholz,* the then-existing controlling precedent under the Act. See generally G. Emil Ward, Massachusetts Landlord-Tenant Practice: Laws and Forms §§ 7(a), 9(e).

[5]The "last months rent" reference appears to be a misnomer because no such item was ever held back by the landlord or otherwise sought by the tenant. "A security deposit is not rent." *Mellor* v. *Berman,* 390 Mass. at 280 n.10. A landlord may deduct from the deposit any unpaid rent that has not been lawfully withheld by the tenant, see G. L. c. 186, § 15B(4), in winding up the tenancy. *Mellor* v. *Berman, supra.*

$613.14 trebled, without deduction,[6] and awarded the total to the tenant. The judge declined to award costs. The tenant then lodged this appeal; the landlord has elected not to appear in this round of appellate proceedings.

*Discussion.* 1. *The Act.* General Laws c. 186, § 15B, amended through St. 2004, c. 416, § 1, defines the rights and duties of a residential landlord and tenant, with regard to a deposit pledged by the latter to secure his or her performance under a lease contract (or other agreement). See *Hampshire Village Assocs.* v. *District Ct. of Hampshire*, 381 Mass. at 152. The Act combines and ties together detailed regulatory mandates for landlords, with a specialized compensatory damages scheme for aggrieved tenants. Justification for the Act can be drawn from the "unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants." *Id.* at 154, quoting from *Lindsey* v. *Normet*, 405 U.S. 56, 72 (1972).

In particular, "[b]y limiting the freedom of landlords and tenants to contract in this regard [as to security deposits], the Legislature manifested a concern for the welfare of tenants in residential property who, as a practical matter, are generally in inferior bargaining positions and find traditional avenues of redress relatively useless; i.e., the legal expense of chasing a security deposit would be more than the amount of the deposit" in and of itself. *Id.* at 152-153, quoting from *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 91 (1979).

Tenants may bring an action to enforce the Act's provisions, but recovery nonetheless hinges on the customary showing that a violation caused the tenant to suffer an injury or loss of money. The instant facts foreclose a claim by the tenant to recover damages under the Act. His contentions otherwise lack merit for the following reasons.

---

[6]Initially, the judge deducted $45.83, reasoning that the landlord was entitled to rent for the tenant's holdover use and occupancy. The tenant filed a motion for reconsideration, and the judge deemed such a deduction inappropriate in the circumstances, since the unpaid use and occupancy rent issue had apparently been decided in a separate proceeding in the small claims session of the District Court. Proof of any such findings or order by the District Court has not found its way into the record on appeal. Assertions as to some form of claim preclusion or res judicata thus cannot be sustained.

a. *Termination of occupancy.* The tenant argues he vacated the premises by August 31, 2007, when his tenancy terminated pursuant to the lease. His evidentiary showing left the judge unconvinced, and he found that the tenant had held over and ended his occupancy no sooner than September 1. The tenant claims this was error. He had the burden of proving when in fact he surrendered possession. *Caruso* v. *Shelit*, 282 Mass. 196, 199 (1933). He has not shown that the judge's finding was clearly erroneous.[7]

The judge had a first-hand view of the presentation of the evidence, assessed its weight and credibility, including the parties' contradictory testimony, see note 3, *supra*, and found that the landlord's narrative was the only credible account of the events in question. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Gallagher* v. *Taylor*, 26 Mass. App. Ct. 876, 881 (1989), quoting from *Anderson* v. *Bessener*, 470 U.S. 564, 573-574 (1985).

The record before this court does not contain a transcript of the evidentiary hearing. "Without a record of the testimony or representations at the hearing, we have no basis for concluding that the evidence did not support the judge's finding[]" as to when the tenant had relinquished possession of the premises. *Arch Med. Assocs., Inc.* v. *Bartlett Health Enterprises, Inc.*, 32 Mass. App. Ct. 404, 406 (1992). See *Kunen* v. *First Agric. Natl. Bank of Berkshire County*, 6 Mass. App. Ct. 684, 691-692 (1978). The tenant has not supplied the court with an adequate record to support his assignments of error,[8] and, thus, no reasonable basis exists for the court to review, much less disturb, the judge's findings.[9]

---

[7]"To prevail on appeal on the basis of an assault on a judge's factual findings is no easy matter, for we accept the judge's findings of fact as true unless they are 'clearly erroneous.' " *Millennium Equity Holdings, LLC* v. *Mahlowitz*, 456 Mass. 627, 636 (2010), quoting from *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992).

[8]See Mass.R.A.P. 18(a), as amended, 425 Mass. 1602 (1997). The tenant has appeared pro se at all times, as far as we can glean from the record. "The right of self-representation is not 'a license not to comply with relevant rules of procedural and substantive law.' " *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 847 (1983), quoting from *Faretta* v. *California*, 422 U.S. 806, 834-835 n.46 (1975).

[9]Compare *Taylor I*, where this court was obliged, for purposes of reviewing

b. *Return of part of deposit.* As the case stands, on the facts, the landlord's duty under G. L. c. 186, § 15B, to return the deposit accrued no earlier than September 1. His time to do so expired October 1. The tenant contends the judge erred as matter of law by ruling that the landlord's "return" of the $871.67 funds, by mailing on October 1, was timely. The tenant argues that the word "return" as used in § 15B means the tenant must "receive" the deposit monies within the statutory period. The text of the Act does not support the reading the tenant has superimposed on it.[10]

Nowhere in G. L. c. 186, § 15B, does the Legislature refer to a tenant's "receipt," or his or her "receiving" security deposit funds, for purposes of defining the landlord's corresponding duty to return the deposit to the tenant. The dictionary meaning of the verb form of "return," with reference to an item, is "to put, . . . send back to [its] original place, . . . [or] repay." Random House Dictionary of the English Language 1225 (unabridged ed. 1973). The act of sending back the deposit to a tenant, not *actual* receipt, is what the Act commands a landlord to perform within the time allowed. Proof of mailing provides some certainty in this highly technical statutory context. The court declines the tenant's invitation to add to or alter the words the Legislature has chosen to employ in the Act.

It bears some emphasis that under the Act, the purpose of a tenant's security deposit is to "provide a source of funds for the payment of the cost of repairs for which a tenant is responsible." *Jinwala* v. *Bizzaro*, 24 Mass. App. Ct. 1, 7 (1987). "It would not

the challenged judgment of dismissal, to accept the factual allegations as true.

On remand, the trial judge heard and received evidence offered by the parties, and issued detailed factual findings, which I have summarized above. Based on those *factual findings*, not shown in this appeal to be clearly erroneous, the tenant cannot prove as matter of law a violation of the Act upon which relief can be granted.

[10]I interpret the words of the Act consistent with "their literal meaning and the purpose and history of the statute within which they appear." *Atlanticare Med. Center* v. *Commissioner of the Div. of Med. Assistance*, 439 Mass. 1, 6 (2003), quoting from *Massachusetts Hosp. Assn.* v. *Department of Med. Sec.*, 412 Mass. 340, 345-346 (1992). The text "is neither peculiar nor technical, but is comprised rather of familiar words," employed to address the well-known security deposit problems. *Jason* v. *Jacobson*, 387 Mass. 21, 24 (1982), quoting from *New England Med. Center Hosp., Inc.* v. *Commissioner of Rev.*, 381 Mass. 748, 750 (1980).

be in keeping with this purpose" if the court were to interpret the Act in such a way as "to require return of a security deposit before the tenant vacates the premises." *Neihaus* v. *Maxwell*, 54 Mass. App. Ct. 558, 562 (2002). By his holding over, the tenant altered the time when the landlord was obliged to return the deposit, a conclusion entirely consistent with the architecture of the Act as a whole.[11]

The Act draws a plain distinction between two materially different events: termination of the tenancy, as specified by the lease, on the one hand, and the termination of the occupancy, as in the holdover situation or tenancy-at-sufferance (or tenancy-at-will), on the other hand. See G. L. c. 186, § 15B(4), (6)(*b*), & (6)(*e*). The termination of the tenancy is typically a straightforward situation where both the residential tenant and landlord can predict with certainty the time line from which their corresponding rights and obligations under the Act accrue. By contrast, the termination of a holdover tenant's occupancy can be (as here) an unsettled circumstance, which may allow for some measure of doubt in the minds of the landlord and tenant, as to when certain obligations, including but not limited to the "return" of the security deposit, must be accomplished. That is why implicitly the Act requires the imposition of treble damages for a landlord's failure to return the deposit, only in the context of the former event, i.e., within thirty days after "termination of the tenancy," under the combined provisions of § 15B(6)(*e*) and (7), as opposed to the end or termination of the occupancy of the holdover tenant, see § 15B(4), providing that the lessor "shall, within thirty days after the termination of occupancy under a tenancy-at-will . . . return to the tenant the security deposit or any balance thereof." A tenant who holds over in effect becomes by law a tenant-at-sufferance. The instant case falls into the latter category for which treble damages are not authorized under § 15B(7) for a landlord's late return of deposit funds. Relatedly, as involved here, a residential landlord's failure to comply with the specific documentary and accounting requirements, mandated by § 15B(4)(iii) and (6)(*b*), does not, in and of itself, constitute an act on which treble damages may

---

[11]In any event, it would seem that logic dictates that the landlord should be given a reasonable time to ascertain whether there has been any damage to the premises so that he may determine the costs needed for repair.

be based under § 15B(7). Section 15B(7) authorizes multiple damages if, and only if, the landlord (or agent) runs afoul of § 15B(7)(*a*), (*d*), or (*e*), none of which is implicated in the present controversy.[12]

The judge correctly held the landlord timely returned the $871.67, but failed timely to return the $613.14 balance. In the end, I return to the larger question whether the tenant stated a claim under the Act upon which relief may be granted, an issue subject to plenary review. See *Rattigan* v. *Wile*, 445 Mass. 850, 855 (2006). Here, dismissal was required.[13]

c. *No harm.* Admittedly, the landlord violated the Act by providing the tenant with an unsworn-to list of the damage to the premises, rather than one that was attested to and signed under the penalties of perjury. The noncompliant list could not deter the tenant from asserting any legal rights under the Act. The defective list did not render the tenant any worse off than if the landlord had satisfied the Act's documentary requirements for disclosure of waste at the end of the occupancy. Compare *Hershenow* v. *Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 800-801 (2006) (noncompliant terms in automobile rental contract caused no harm to customer who was no "worse off during the rental period than he or she would have been had the [contractual terms] complied in full" with governing law). The tenant was made whole; he was not forced to resort to legal process to correct wrongdoing nor was he denied his legal rights. Nonetheless, he chose to pursue an action, not only for relief in the form of treble damages, but also court costs and other fees. This was folly, for it has never been shown he suffered an "injury" or "loss of money" consistent with any accepted understanding of those terms as defined by the Supreme Judicial

---

[12]Even if it could be said that a landlord's breach of the documentary and accounting requirements might form the basis of a G. L. c. 93A violation, see 940 Code Mass. Regs. § 3.17(4)(h) (1993), which would, in turn, by necessity, require the aggrieved tenant to serve a demand letter upon the landlord and commence an action no earlier than thirty days thereafter. Here, the tenant's action was commenced some six days after having made a written demand of his landlord for treble damages. See *Casavant* v. *Norwegian Cruise Line Ltd.*, 460 Mass. 500, 505-507 (2011).

[13]This is not technically a dismissal on the pleadings, but akin to a directed verdict on the evidence, since the tenant has not sustained his burden of proving a claim for relief under the Act.

Court and this court. See, e.g., *id.* at 800-802; *Casavant* v. *Norwegian Cruise Line Ltd.*, 460 Mass. 500, 503 (2011). See also *Kwaak* v. *Pfizer, Inc.*, 71 Mass. App. Ct. 293, 298-301 (2008).

The judgment should be vacated, and the case remanded for entry of a judgment dismissing the complaint. I would not award costs to either of the parties.