# United States Court of Appeals
## For the First Circuit

No. 16-1254

SCOTT PHILLIPS, individually and on
behalf of all others similarly situated,

Plaintiff, Appellant,

v.

EQUITY RESIDENTIAL MANAGEMENT, L.L.C.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges.

David Pastor, with whom Pastor Law Office LLP, Joshua N.
Garick, Law Office of Joshua N. Garick, Preston W. Leonard, and
Leonard Law Office PC were on brief, for appellant.
Craig M. White, with whom Baker & Hostetler LLP, Thomas H.
Wintner, and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
were on brief, for appellee.

December 12, 2016

**STAHL**, **Circuit Judge**.  This dispute arises out of a class action brought by Scott Phillips against his former landlord, Equity Residential Management, L.L.C. ("ERM").  Phillips alleged that ERM violated several provisions of the Massachusetts Security Deposit Law ("Security Deposit Law"), Mass. Gen. Laws ch. 186, § 15B, relating to unlawful charges or deductions taken against his security deposit and ERM's failure to return the security deposit within thirty days after he moved out of his leased apartment.  The purported class consisted of other former tenants of ERM-owned or managed apartments who also, since August 6, 2009, had these same grievances.[1]  As recompense, Phillips sought recovery under the Security Deposit Law's penalty provision, Mass. Gen. Laws ch. 186, § 15B(7), which includes, inter alia, the availability of treble damages.

At summary judgment, the district court awarded Phillips a Pyrrhic victory:  though he was entitled to recover his security deposit (less a small amount of holdover rent), the district court refused to apply Section 15B(7), and soon after denied his class

---

[1] The purported class also consisted of two subclasses, a "Sworn Statement Subclass" and a "Cleaning Charge Subclass."  These subclasses relate to Phillips's contention that ERM violated several different provisions of the Security Deposit Law and that his claims are typical of the claims of each subclass.  The merits of Phillips's proposed class, however, are not before this court.

certification motion on mootness grounds.[2] Phillips challenges these rulings on appeal, arguing that the district court should have ruled on his class certification motion before the parties' summary judgment motions, that his class certification motion should not have been dismissed as moot, and that he was entitled to recovery under Section 15B(7).

Phillips's last contention is of particular importance, since the outcome turns on provisions of the Massachusetts Security Deposit Law that have not been interpreted by the Massachusetts Supreme Judicial Court ("SJC") in over three decades. See Mellor v. Berman, 454 N.E.2d 907, 910-13 (Mass. 1983). Generally, we must make an "informed prophecy" as to how the highest state court would rule on questions of that state's law. Ambrose v. New Eng. Ass'n of Schs. & Colls., Inc., 252 F.3d 488, 497-98 (1st Cir. 2001) ("Our task . . . is to discern the rule the state's highest court would be most likely to follow under these circumstances, even if our independent judgment might differ."). The SJC's guidance in this area, however, is "sufficiently undeveloped . . . so as to make such prophetic action unwise," see Showtime Entm't, LLC v. Town of Mendon, 769 F.3d 61, 79 (1st Cir. 2014). For this reason and the others that follow, we certify a question regarding the

---

[2] The district court determined that "Phillips no longer ha[d] a live individual case because all of his claims have been decided" and "[a]s a result, proceeding to class certification [would be] inappropriate."

relevant provisions of the Massachusetts Security Deposit Law to the SJC, and refrain from deciding the merits of Phillips's other claims until that question is resolved.  See Mass. S.J.C. R. 1:03; see also, e.g., Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 48, 50-53 (1st Cir. 2013).

## I.

We recite the facts relevant to the certified question. Phillips and a friend, Sean Ostriker,[3] entered into a written lease with ERM for an apartment located at Longview Place in Waltham, Massachusetts.  The lease term lasted from July 20, 2012 to May 19, 2013.  In accordance with the lease, Phillips paid ERM a $750.00 security deposit prior to move-in, and he requested its return shortly after vacating the apartment on May 20, 2013.  After receiving his request, ERM sent Phillips a signed Statement of Deposit Account ("SODA") listing charges against his security deposit totaling $968.08.[4]  The SODA credited $750.06 against this amount, reflecting Phillips's $750.00 security deposit and $0.06 in accumulated interest, and claimed a balance due of $218.02.

---

[3] Ostriker moved out of the apartment in December 2012 and arranged for one of Phillips's fraternity brothers, Gil Jacobs, to take his place.  Jacobs moved into the apartment in February 2016. Jacobs, however, moved out in April 2013, leaving Phillips as the sole tenant.

[4] The charges included unpaid rent, a late payment fee, apartment and carpet cleaning charges, a carpet replacement charge, and an "Other Phys Damages" charge.

On August 6, 2013, Phillips filed a class action complaint against ERM in Massachusetts Superior Court. He alleged that ERM had violated the Security Deposit Law by: (1) not providing him, within thirty days of his vacating the apartment, sufficiently detailed written evidence of damages for which funds were deducted from his security deposit, (2) not providing him with an itemized list of damages sworn to under the pains and penalties of perjury, and (3) impermissibly deducting certain cleaning charges from his security deposit. ERM removed the case to the United States District Court for the District of Massachusetts based on diversity of citizenship, see 28 U.S.C. § 1332(d), and counterclaimed for the $218.02 balance outlined in the SODA.

Soon after, both Phillips and ERM moved for summary judgment. The district court found that ERM did not comply with Mass. Gen. Laws ch. 186, § 15B(4)(iii), which required ERM to provide Phillips with "an itemized list of damages" sworn to "under pains and penalties of perjury." Phillips v. Equity Residential Mgmt., No. 13-12092, 2015 WL 12733438, at *3 (D. Mass. Dec. 14, 2015). This failure, the court concluded, also resulted in a second violation under a separate provision of the Security Deposit Law since Phillips did not receive the required "itemized list of damages . . . in compliance with the provisions of [Section 15B]"

- 5 -

within thirty days after the termination of his tenancy.[5]  Id.
(quoting Mass. Gen. Laws ch. 186, § 15B(6)(b)).  Based on this
second violation, the district court held that ERM forfeited its
right to retain any part of Phillips's security deposit.  Id.; see
also Mass. Gen. Laws ch. 186, § 15B(6) (stating that a lessor
"shall forfeit [the] right to retain any portion of [a tenant's]
security deposit for any reason" if the lessor violates any
provision of Section 15B(6)).

Phillips nonetheless insisted that ERM's Section
15B(6)(b) violation resulted in a third Security Deposit Law
violation under Mass. Gen. Laws ch. 186, § 15B(6)(e).  That
provision provides that a lessor must "return to the tenant the
security deposit or balance thereof to which the tenant is entitled
after deducting therefrom any sums in accordance with the
provisions of this section, together with any interest thereon,
within thirty days after termination of the tenancy."  Id.

The alleged Section 15B(6)(e) violation, Phillips
continued, activated yet another Security Deposit Law provision,
Mass. Gen. Laws ch. 186, § 15B(7).  Section 15B(7) awards tenants

---

[5] Phillips emailed ERM to request the return of his security
deposit on May 28, 2013.  He claims that ERM sent him his SODA
detailing the charged damages to the apartment in "late May or
Early June," though the record suggests that it was mailed that
same day.  Phillips's father, a guarantor of his son's lease, later
sent an email to ERM on June 23, 2013 (thirty-four days after
Phillips had vacated the apartment) asserting that the SODA did
not comply with Section 15B's requirements.

"three times the amount of [their] security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five per cent from the date when such payment became due, together with court costs and reasonable attorney's fees" if the lessor or his agent fails to comply with clauses (a), (d), or (e) of Section 15B(6).  Id.

The district court, however, refused to entertain Phillips's argument, finding that ERM only violated Section 15B(6)(e) because of its violation of Section 15B(6)(b).  Phillips, 2015 WL 12733438, at *4.  Under Phillips's reading of the statute, the court reasoned, any violation of Section 15B(6)(b) would result in a violation of Section 15B(6)(e), making Section 15B(6)(b) redundant.  Id.  Since Section 15B(6)(b) is not listed in Section 15B(7), the district court also inferred that Section 15B(6)(b) was excluded from its list "by deliberate choice."  Id. at *3. Thus, the district court limited Phillips recovery to $647.58.[6] This appeal followed.

## II.

A federal court is permitted to certify questions to the SJC "if there are involved in any proceeding before it questions

---

[6] The amount reflects the district court's holding that Phillips was entitled to recover his $750.00 security deposit, but nonetheless owed ERM $102.42 in holdover rent since Phillips conceded that he stayed in the apartment one day past the date on which he had agreed to vacate.  Id. at *5.

of law of [Massachusetts] which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."  Mass. S.J.C. R. 1:03; see also In re Engage, Inc., 544 F.3d 50, 52-53 (1st Cir. 2008); Bos. Gas Co. v. Century Indem. Co., 529 F.3d 8, 13-15 (1st Cir. 2008).[7]  We conclude that this case meets those requirements.

To start, issues of state law are determinative.  If the SJC concludes that a violation of Section 15B(6)(b) does not also constitute a violation of Section 15B(6)(e) for Section 15B(7) purposes, then that answer shall be determinative as to Phillips's personal claim.  In other words, Phillips will only receive "the full measure of relief [he] seek[s]" if the SJC agrees with his position that Section 15B(7) is invoked in such circumstances.  See Easthampton Sav. Bank, 736 F.3d at 50; see also Bos. Gas Co.,

---

[7] Although neither party requested certification, "we have the discretion to certify questions to the SJC sua sponte." Easthampton Sav. Bank, 736 F.3d at 50 n.4.  At oral argument, we asked the parties whether certification on this issue was appropriate.  Neither party objected to certification, though both questioned the judicial economy of sending Phillips's $750 claim to the SJC.  Still, both parties conceded that certification might be "appropriate" and a "viable option."  Regardless, the SJC "has previously answered questions certified even over the objections of both parties."  Id. (citing Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 649 N.E.2d 1101, 1101-02 (Mass. 1994) (answering certified question); and Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1224 (1st Cir. 1994) (noting objections to certification)).

529 F.3d at 15 (certifying questions to the SJC that were "determinative of the scope" of the plaintiff's claim).

Meanwhile, we have interpreted the SJC's second requirement that there be no controlling precedent as preventing certification "in cases when 'the course [the] state court[] would take is reasonably clear.'" Easthampton Sav. Bank, 736 F.3d at 51 (alterations in original) (quoting In re Engage, 544 F.3d at 53). The course that a state court would take is not reasonably clear when a case "presents a close and difficult legal issue." Id. As we will explain, such is our current predicament.

The district court's interpretive methodology admittedly has a certain intuitive appeal: the Massachusetts Legislature deliberately excluded Sections 15B(6)(b) and (c) from Section 15B(7)'s list, suggesting that violations of these provisions are excused from the Security Deposit Law's enhanced penalties. Similarly, if violations of Section 15(6)(b) also necessarily constituted violations of Section 15B(6)(e), both sections may lose their independent meaning. See Blum v. Holder, 744 F.3d 790, 803 (1st Cir. 2014) ("Avoidance of redundancy is a basic principle of statutory interpretation.").

The Security Deposit Act's recognized purpose and legislative history, however, complicate matters. The SJC has noted that the Security Deposit Law "manifest[s] a concern for the welfare of tenants . . . who, as a practical matter, are generally

- 9 -

in inferior bargaining positions and find traditional avenues of redress relatively useless." Mellor, 454 N.E.2d at 912 (internal citation and quotation marks omitted). Nonetheless, some Massachusetts courts emphasize that "the purpose of § 15B is seen not to be arbitrarily penal; rather, the 'underlying goal [is to establish] an "equitable relationship"' between tenants and landlords." Castenholz v. Caira, 490 N.E.2d 494, 497 (Mass. App. Ct. 1986) (alteration in original) (quoting McGrath v. Mishara, 434 N.E.2d 1215, 1222 (Mass. 1982)).

Mellor similarly traces the gradual evolution of the Security Deposit Law:

> In 1969, § 15B merely stated that a lessor might not require a security deposit in an amount in excess of two months' rent. One year later the Legislature added a penalty of double damages for the wilful withholding of a tenant's security deposit. The requirement in the multiple damages provision of a wilful violation was deleted by the Legislature in 1972 and has remained omitted despite substantial changes in the form of the legislative controls on security deposits. The deletion of the requirement of a finding of bad faith was not accidental.

454 N.E.2d at 912-13 (citations omitted).

Later changes to the statutory framework further subjected landlords to larger potential monetary penalties (i.e., Section 15B(7)). Massachusetts Security Deposit Law, ch. 979, sec. 1, § 15B(7), 1977 Mass. Acts 1418, 1418-25 (1978). The Legislature, however, also identified a landlord's obligations

- 10 -

under the Security Deposit Act with more specificity and limited Section 15B(7)'s application to only certain of those violations. Id.

One potential reading of Section 15B's evolution suggests that the legislature wished to empower tenants, but in a limited and balanced way. Nonetheless, certain Massachusetts courts view the history differently and suggest that the Legislature's significant interest in compliance with Section 15B's requirements warrants a broad application of its penalty provision. See Taylor v. Beaudry, 971 N.E.2d 313, 318 (Mass. App. Ct. 2012) (Taylor II) ("[T]he Legislature thought the deterrent effect of [these] suits . . . was necessary to ensure all landlords return security deposits on time and in full compliance with the statute.").

As previously mentioned, the SJC has not provided guidance on these provisions of the Security Deposit Law in 33 years. See Mellor, 454 N.E.2d at 907. And in the guidance provided, the SJC has not opined on how or whether a lessor's noncompliance with Section 15B(4)(iii) might lead to violations of Sections 15B(6)(b) and (e) and subsequent penalties under Section 15B(7). See id. at 909 n.4, 913 (declining to consider the issue and limiting its inquiry to whether a lessor's good faith mitigated against awarding damages under Section 15B(7)).

Despite this lack of clarity, the district court made its ruling notwithstanding two Massachusetts state court decisions construing the interplay between Sections 15B(6)(b), (6)(e), and (7). See Taylor v. Beaudry, 914 N.E.2d 931, 933-36 (Mass. App. Ct. 2009) (Taylor I), review denied 920 N.E.2d 44 (Table) (Mass. 2009); Carter v. Seto, 2005 Mass. App. Div. 62, 2005 WL 1383337, at *4-5 (Mass. App. Div. 2005), aff'd, 849 N.E.2d 925 (Table) (Mass. App. Ct. June 29, 2006), review denied, 853 N.E.2d 1059 (Table) (Mass. 2006).

In Taylor I, a tenant vacated his apartment on August 31, 2007. 914 N.E.2d at 932. By mail postmarked October 1, 2007, the landlord sent the tenant a check covering his security deposit and accrued interest, minus charges for cleaning and repairs to the tenant's apartment. Id. Accompanying the check was an undated letter detailing the charges, but the letter was not signed under the pains and penalties of perjury as required by Section 15B(4)(iii). Id. In response, the tenant filed a complaint claiming that the landlord had violated Section 15B(6)(b) by not providing him with an itemized list of damages in compliance with the provisions of Section 15B, and therefore had forfeited any right to the entire security deposit. Id. The tenant also claimed that the landlord had violated Section 15B(6)(e) because the landlord did not return any portion of the security deposit within

thirty days after the end of his tenancy.[8]  Accordingly, the tenant

sought a judgment for three times the total amount of his deposit,

plus interest, costs, and reasonable attorney's fees, pursuant to

Section 15B(7).  Id.

The court concluded that the landlord's conduct had

triggered Section 15B(7), and stated that Section 15B(6)(e)'s

"statutory obligation to return the deposit is clear, as is the

time within which the deposit must be returned."  Id. at 416.  It

went on, however, to declare that "failure to return the security

deposit, less any amounts that § 15B(4)(iii) permits the landlord

to retain, within [thirty days] subjects the landlord to" Section

15B(7) damages.  Id. at 417.

Carter presented a similar factual scenario but was more

explicit in its reasoning.  In that case, tenants sued under

Section 15B after receiving a letter from their previous landlord

stating that they could recover only $270.22 of their $2,150.00

security deposit.  Carter, 2005 WL 1383337, at *2.  The letter,

which itemized the damages charged against the security deposit,

was not signed under the pains and penalties of perjury and did

not include any repair bills or estimates to substantiate these

---

[8]  The court noted that "[a]t some point shortly after
receiving the [tenant's] complaint, the landlord returned to the
tenant the balance of the security deposit."  Id.  However, "the
record [was] clear that [the landlord] did not return the balance
within thirty days following termination of the tenancy."  Id. at
412-13.

- 13 -

charges.  Id.  Unlike in Taylor I, the letter was dated only nineteen days after the tenants relinquished possession of the apartment.  Id. at *1-2.

The court ultimately determined that the letter was noncompliant with Section 15B(4)(iii) and that the landlord's "failure to submit a properly sworn itemized list of security deposit deductions within the time mandated by the statute resulted in a forfeiture of [the landlord's] right to retain any portion of the security deposit."  Id. at *4.  The landlord was therefore required to return the full amount of the security deposit within thirty days of the termination of the tenancy and did not do so, resulting in a violation of Section 15B(6)(e).  Id.  The court then awarded the tenants damages pursuant to Section 15B(7).  Id.

Given Taylor I and Carter's factual similarities to the current case, these two decisions raise a measure of doubt that the SJC would agree with the district court's interpretation. Thus, although the statutory provisions to be applied in this case are readily apparent, "the application of those [statutes] is difficult, and the outcome far from certain."  See Easthampton Sav. Bank, 736 F.3d at 51.

Nonetheless, "[t]hat a legal issue is close or difficult is not normally enough to warrant certification, or else diversity cases would regularly require appellate proceedings in two courts."  Bos. Gas Co., 529 F.3d at 15.  Additional factors,

- 14 -

including "the dollar amounts involved, the likely effects of a decision on future cases, and federalism interests," guide our decision of whether to certify questions to the SJC. See Easthampton Sav. Bank, 736 F.3d at 52.

Though Phillips's individual claim may revolve around a relatively small $750.00 security deposit, the outcome of the case has the potential to impact a large swath of current and future tenancies throughout Massachusetts. See id. (certifying questions to SJC partly because the outcome of the case "ha[d] the potential to impact thousands of outstanding and future mortgages" across Massachusetts). The many residential landlords operating in the Commonwealth, meanwhile, rely on interpretations of these important provisions of the Security Deposit Law when structuring their business activities. The case also involves interpretation of a state statute governing an area of traditional state authority. See Conille v. Sec'y of Hous. & Urban Dev., 840 F.2d 105, 111 (1st Cir. 1988) (stating that "the area of landlord-tenant law . . . typically has been the province of state courts and legislatures."). Certifying questions about these issues thus "promotes 'strong federalism interests.'" Easthampton Sav. Bank, 736 F.3d at 53 (quoting Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs., 608 F.3d 110, 119 (1st Cir. 2010)).

- 15 -

## III.

For the above reasons, we certify the following question of Massachusetts law to the SJC:

> 1.      With respect to the Massachusetts Security Deposit Law, Mass. Gen. Laws ch. 186, § 15B, when a lessor violates the terms of Section 15B(4)(iii), does the lessor's corresponding violation of Section 15B(6)(b), which "forfeit[s] his right to retain any portion of the security deposit for any reason," id. § 15B(6), also constitute a violation of Section 15B(6)(e) -- ""fail[ing] to return to the tenant the security deposit or balance thereof to which the tenant is entitled . . . within thirty days after termination of the tenancy" -- thereby triggering the statute's treble damages provision, Section 15B(7)?

We would also welcome any other comments that the SJC may wish to offer on any relevant aspects of Massachusetts law. The Clerk of this court is directed to forward to the SJC, under the official seal of this court, a copy of the certified question and our opinion in this case, along with copies of the parties' briefs and appendices. We retain jurisdiction over this appeal pending resolution of the certified question.

*So ordered*.