# United States Court of Appeals
## For the First Circuit

No. 16-1996

JOHN W. STEINMETZ; JANE C. STEINMETZ,

Plaintiffs, Appellants,

v.

COYLE & CARON, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

John W. Steinmetz for appellants.
Evan Fray-Witzer, with whom Ciampa Fray-Witzer, LLP was on brief, for appellee.
Richard J. Yurko, Sanford F. Remz, Noemi Kawamoto, Yurko, Salvesen & Remz, P.C., and Sarah Wunsch on brief for the American Civil Liberties Union of Massachusetts, amicus curiae.
Christopher T. Bavitz, Cyberlaw Clinic, Harvard Law School, Bruce Brown, Gregg P. Leslie, and D. Victoria Baranetsky on brief for the Reporters Committee for Freedom of the Press, The Associated Press, Gannett Co., Inc., New England First Amendment Coalition, and New England Newspaper and Press Association, Inc., amici curiae.

June 29, 2017

**LYNCH**, **Circuit Judge**.  Prevented from building a new home in Cohasset, Massachusetts by the Cohasset Conservation Commission, plaintiffs John W. Steinmetz and Jane C. Steinmetz brought this lawsuit alleging state law claims of negligence, gross negligence, defamation, and violation of the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A.  The defendant is Coyle & Caron, Inc., a Florida landscape design firm that was hired by the attorney representing the James Island Preservation Group, a neighborhood association formed to oppose the construction of the Steinmetzes' proposed home.  In this federal case, the Steinmetzes chose to sue the contractor hired to assist in the Group's opposition by producing and presenting renderings of the proposed home to the Conservation Commission.

Before the district court, Coyle & Caron moved to dismiss the lawsuit pursuant to the Massachusetts Strategic Litigation Against Public Participation statute ("anti-SLAPP statute"), which allows a defendant to move to dismiss any claim that arises from its exercise of its right of petition.  Mass. Gen. Laws ch. 231, § 59H.  Coyle & Caron also moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The district court ruled in Coyle & Caron's favor on all counts, granting its special motion to dismiss under the anti-SLAPP statute and also granting, in the alternative, its Rule 12(b)(6) motion.  See Steinmetz v. Coyle & Caron, Inc., No.

15-cv-13594-DJC, 2016 WL 4074135 (D. Mass. July 29, 2016). Regarding the special motion to dismiss, the district court held that the state anti-SLAPP statute applied in federal court, id. at *3-4, that the statute did not violate the Seventh Amendment of the U.S. Constitution, id. at *6, and that the statute applied to this case, id. at *4-5. It ruled as such over the Steinmetzes' objection that Coyle & Caron -- as a "disinterested paid witness" hired to assist another in petitioning the government, and not a citizen exercising his or her own right of petition -- should not receive the protection of the anti-SLAPP statute. Id. at *4.

After confirming the constitutionality and applicability of the statute, the district court next found that Coyle & Caron, as the party seeking the protection of the anti-SLAPP statute, had made its threshold showing that the Steinmetzes' claims were based exclusively on Coyle & Caron's petitioning activities. Id. at *6-7. At that point, the court ruled, in reliance on then-existing state law, that the burden shifted to the Steinmetzes to show that Coyle & Caron's petitioning activity "was devoid of any reasonable factual support or any arguable basis in law and [that Coyle & Caron's] actions caused actual injury." Id. at *6. The district court held that the Steinmetzes had failed to meet this burden and thus could not defeat Coyle & Caron's special motion to dismiss. Specifically, it found that the renderings, which were developed to petition the Conservation Commission, had "reasonable factual

- 4 -

support," as they were "the product of well-trained professionals who examined multiple sources," including architectural plans and photos of James Island. Id. at *8. The mere fact that the Steinmetzes' own architect found inaccurate certain aspects of the renderings did not establish that "no reasonable person would conclude that there was a [factual] basis" for the renderings. Id.

Further, the district court found that the renderings did not cause actual injury to the Steinmetzes, as the Conservation Commission had explained in its Memorandum of Decision that it did not approve the proposed construction project because the home's driveway "would adversely affect adjacent salt marsh wetlands and Plaintiffs failed to demonstrate their entitlement to a variance." Id. at *9. The Memorandum did not refer to Coyle & Caron's renderings. In fact, as the district court noted, two of the Commission members who voted against the proposal publicly stated that "they were not considering Coyle & Caron's [r]enderings in reaching their decision." Id.

Finally, the district court held that, under Rule 12(b)(6), Coyle & Caron was also entitled to dismissal of each of the Steinmetzes' claims. Id. at *9-11. It dismissed the negligence and gross negligence claims because Coyle & Caron owed no duty to the Steinmetzes, id. at *9, the defamation claim because Coyle & Caron's renderings constituted opinion and not fact, id.

- 5 -

at *10, and the chapter 93A claim because the Steinmetzes lacked any business or commercial relationship with Coyle & Caron, id. at *11.

The Steinmetzes appeal, restating their arguments that the anti-SLAPP statute is unconstitutional, that it does not apply to this case, and that the district court erred by granting Coyle & Caron's special motion, even assuming the statute applies. The Steinmetzes also challenge the dismissal of their claims under Rule 12(b)(6).

After the parties completed their briefing and presented oral argument before us, Massachusetts law on the anti-SLAPP statute dramatically shifted. On May 23, 2017, the Supreme Judicial Court of Massachusetts ("SJC") issued two decisions on that statute. See Blanchard v. Steward Carney Hosp., Inc., 75 N.E.3d 21 (Mass. 2017); 477 Harrison Ave., LLC v. Jace Bos., LLC, 74 N.E.3d 1237 (Mass. 2017). The SJC's decision in Blanchard, in particular, augmented the previous burden-shifting framework such that the nonmoving party could survive a special motion to dismiss also by establishing that its claims were not "primarily brought to chill the special movant's legitimate petitioning activities." 75 N.E.3d at 38-39. To understand how the recent Blanchard and 477 Harrison Ave. decisions impact this case, we requested and received supplemental briefing from both parties.

- 6 -

We affirm today the district court's determinations that Coyle & Caron's renderings constitute petitioning activity within the meaning of the statute if the statute applies to Coyle & Caron as a third-party contractor, and that the Steinmetzes failed to show that the renderings lacked any reasonable factual basis. We further hold that the Steinmetzes' negligence, gross negligence, and chapter 93A claims are not colorable under the augmented anti-SLAPP framework. We cannot do the same for the defamation claim, as that claim arguably offers some reasonable possibility of a decision in the Steinmetzes' favor. However, in order to dismiss any of the Steinmetzes' claims under Coyle & Caron's special motion, we face the threshold issue of whether Coyle & Caron, as a third-party contractor hired to assist with the Preservation Group's petitioning activity, can even avail itself of the special motion. As there is no controlling precedent from the SJC on this determinative question of state law, we certify it for resolution by that court.

## I.

The Steinmetzes own approximately 6.68 acres of land at 1 James Island Way, Cohasset, Massachusetts. This land, on which the Steinmetzes planned to build a single-family dwelling, is part of James Island, a peninsula surrounded by Inner Little Harbor. After securing a sewer permit for this proposed construction from the Town of Cohasset, the Steinmetzes submitted a Notice of Intent

application to the Cohasset Conservation Commission. The Steinmetzes hired a local architectural firm co-headed by Can Tiryaki to design the home.

Certain residents of the Inner Little Harbor area opposed the construction of the Steinmetzes' home on James Island and formed the James Island Preservation Group to voice that opposition. The Steinmetzes allege that the Preservation Group opposed the construction out of fear that the scenic views from the members' homes "might change[,] as there would now be a house on the previously undeveloped James Island." The Preservation Group's attorney hired Coyle & Caron to prepare renderings of the Steinmetzes' proposed home for submission to the Conservation Commission. Sally Coyle, President of Coyle & Caron, and Yuka Suganuma (a landscape architect who worked with Coyle & Caron) participated in creating the renderings.

The Steinmetzes allege that these renderings were "false, fraudulent[,] and defamatory" in five ways. First, the renderings used an "incorrect view location," which resulted in an inaccurate three-dimensional depiction of the house. Second, they used "multiple horizon lines and [an] incorrect perspective," which resulted in "the house appearing significantly higher in the view frame than where it will actually be." Third, they portrayed an "incorrect house orientation," which made the house -- and especially the eastern wing of the house -- appear more visible

than it actually would be.  Fourth, the renderings "represent[ed] a two-dimensional elevation drawing . . . that was stretched and distorted to make it appear three-dimensional," which made it impossible to "represent the actual massing of the house."  Fifth, they represented an "incorrect . . . size and scale of the house" given the four issues noted above, as well as the inaccurate "location of the proposed house on the site."  In addition to these five defects, the Steinmetzes point out that their proposed home "will be surrounded on all sides by a 50 foot buffer of trees," many of which are taller than the proposed house and "will largely hide it from view by others."  Disregarding this design, the Steinmetzes say, the renderings depicted a "hideous behemoth looming over the tree line of the island" (quoting Amanda Thompson, Conservation Commission Says "No" to Large Cohasset Home, Patriot Ledger (Sept. 12, 2015), http://www.patriotledger.com/article/20150912/news/150919497).

On September 3, 2015, Sally Coyle of Coyle & Caron appeared before the Conservation Commission to present the renderings.  In addition, at least one of Coyle & Caron's earlier draft renderings had been posted on a Facebook page created by the Preservation Group.  The Facebook rendering was "circulated throughout Cohasset and Massachusetts" in order to "inflame negative emotions," according to the Steinmetzes.  With regard to this Facebook publication and distribution, Sally Coyle stated in

her affidavit that the first draft of the renderings was not circulated beyond a "small client (and consultant) group" and that she did not intend for the draft to be circulated more widely.  As a result of the publication, the Steinmetzes allege that they "were personally attac[k]ed and ridiculed on Facebook."

The Conservation Commission ultimately voted to deny the Steinmetzes' construction project by a vote of four to two, articulating as its reason that the proposed work would harm adjacent salt-marsh wetlands.  Nonetheless, the Steinmetzes allege that Coyle & Caron's renderings "had a dramatic impact on the Conservation Commission proceedings" by "br[inging] out the masses to the Conservation hearing in opposition to Plaintiffs' Project based upon the unfounded and irrational fear they created, and wrongfully influenc[ing] and bias[ing] four of the Conservation Commission members against Plaintiffs' Project."

On October 19, 2015, the Steinmetzes filed a complaint against Coyle & Caron in the U.S. District Court for the District of Massachusetts, asserting the claims already described.[1]

_____

[1]    The Steinmetzes also initiated three other lawsuits.  One of them was Steinmetz v. Creighton, No. 15-cv-13789-DJC, in the U.S. District Court for the District of Massachusetts against the members of the Cohasset Conservation Commission.  On March 17, 2016, the parties stipulated to the dismissal of that lawsuit without prejudice.

- 10 -

The Massachusetts anti-SLAPP statute provides that "[i]n any case in which a party asserts that the [claims] against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss."  Mass. Gen. Laws ch. 231, § 59H.  It goes on to state that the special motion shall be granted "unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party."  Id.  The statute further instructs that, in assessing whether to grant the special motion, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  Id.

In Baker v. Parsons, 750 N.E.2d 953 (Mass. 2001), the SJC specified the evidentiary standard required to defeat the special motion to dismiss.  Once the party invoking the motion makes its threshold showing that "the claims against [it] were based on petitioning activities and had no substantial basis other than or in addition to those activities," id. at 960, the burden shifts to the nonmoving party "to show by a preponderance of the evidence that the moving party lacked any reasonable factual

- 11 -

support or any arguable basis in law for its petitioning activity," id. at 961. This was the framework under which the district court granted Coyle & Caron's special motion. See Steinmetz, 2016 WL 4074135, at *6-8.

However, the SJC recently "augmented" this framework in Blanchard. See 75 N.E.3d at 38-39. There, the SJC established that after the special movant has met its burden of "demonstrat[ing] that the nonmoving party's claims are solely based on its own petitioning activities," the nonmoving party can now survive the special motion not only by "demonstrating that the special movant's petitioning activities upon which the challenged claim is based lack a reasonable basis in fact or law, . . . and that the petitioning activities at issue caused it injury," but also by "demonstrating that each such claim was not primarily brought to chill the special movant's legitimate petitioning activities." Id. at 38. Blanchard further provided that to make this latter showing, it is "necessary but not sufficient" for the nonmoving party to show that its "claim at issue is 'colorable or . . . worthy of being presented to and considered by the court,' i.e., [that] it 'offers some reasonable possibility' of a decision in the party's favor." Id. at 39 (first alteration in original) (first quoting L.B. v. Chief Justice of Prob. & Family Court Dep't, 49 N.E.3d 230, 238 (Mass. 2016); then quoting Commonwealth v. Levin, 388 N.E.2d 1207, 1209 (Mass. App. Ct. 1979)).

- 12 -

As we understand Massachusetts law in the wake of Blanchard, then, the filing of an anti-SLAPP special motion triggers the following sequential inquiry:

First, we ask whether the special movant has made the threshold showing that the claims against it are "based on petitioning activities and had no substantial basis other than or in addition to those activities." Baker, 750 N.E.2d at 960. If the answer to this question is no, then the special motion fails.

Second, we ask whether the nonmoving party can "show by a preponderance of the evidence that the moving party lacked any reasonable factual support or any arguable basis in law for its petitioning activity," id. at 961, and that the petitioning activity caused the nonmoving party "actual injury," Mass. Gen. Laws ch. 231, § 59H. If the nonmoving party is able to make both of these showings, then the special motion must be denied.

Third, we ask whether the nonmoving party has shown that its own claim -- the one being challenged by the special motion -- is itself "colorable or . . . worthy of being presented to and considered by the court, i.e., [that] it 'offers some reasonable possibility' of a decision in the [nonmoving] party's favor." Blanchard, 75 N.E.3d at 39 (first alteration in original) (citation omitted). If the nonmoving party's claim is not colorable, then the special motion must be granted.

- 13 -

Fourth, and finally, we ask whether the nonmoving party has "demonstrat[ed] that each [challenged] claim was not primarily brought to chill the special movant's legitimate petitioning activities." Id. at 38. If the answer to this question is yes, then the special motion fails. If the answer to this question is no, then the special motion succeeds.

While these questions present an array of interpretive and constitutional issues, the Steinmetzes' initial and supplemental briefs limit their challenge, essentially, to the following: First, the Steinmetzes contend that Coyle & Caron fails at step one of the foregoing sequential inquiry because their claims were not based solely on any legitimate petitioning activity within the meaning of the statute. Second, they argue that step two of the special-motion inquiry as applied by the district court violated their rights under the Seventh Amendment to the United States Constitution because the district court decided disputed issues of material fact. Third, they claim that, in any event, they succeeded in showing that Coyle & Caron lacked any reasonable basis in fact or law for its petitioning activity, which, in turn, caused actual injury to the Steinmetzes. And finally, they argue that their claims against Coyle & Caron were each colorable claims not brought to chill any legitimate petitioning activity.

In considering these arguments, we review de novo the district court's determinations under the pre-Blanchard anti-SLAPP

- 14 -

framework, as they each present questions of law. See Godin v. Schencks, 629 F.3d 79, 85 (1st Cir. 2010). We opt to determine in the first instance the colorability of the Steinmetzes' claims under the post-Blanchard framework because that inquiry also presents questions of law, and the record, together with the initial and supplemental briefing on appeal, is sufficient for us to decide those questions without remand to the district court. Cf. P.R. Tel. Co. v. T-Mobile P.R. LLC, 678 F.3d 49, 57 (1st Cir. 2012).

We conclude that if the anti-SLAPP statute applies to third-party contractors like Coyle & Caron, then Coyle & Caron has met its burden of showing that the Steinmetzes' claims were based solely on legitimate petitioning activities, and the Steinmetzes have failed to show that those activities lacked any reasonable factual basis. We also find, under the augmented framework set forth in Blanchard, that the Steinmetzes' negligence, gross negligence, and chapter 93A claims so lacked any likelihood of success as to be frivolous and, therefore, that there is no need to assess further the Steinmetzes' primary intent in bringing those claims. However, we decline to find the same as to the Steinmetzes' defamation claim. Finally, given our uncertainty that the anti-SLAPP statute applies to third-party contractors like Coyle & Caron in the first place, we certify that question to the SJC.

A.  Claims Based Solely on Legitimate Petitioning Activity

Coyle & Caron's renderings seem to fall squarely within at least two of the five statutory definitions of a statement that constitutes an "exercise of its right of petition."  The first of those definitions is: "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding."  Mass. Gen. Laws ch. 231, § 59H. The second is: "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding."  Id.  Here, Coyle & Caron prepared its renderings -- including the rendering that appeared on Facebook -- in connection with the Conservation Commission's consideration of the Steinmetzes' application.  The company eventually submitted its renderings directly to the Conservation Commission, and Sally Coyle appeared at a hearing before that body in order to present the renderings in support of the Preservation Group's petitioning.  And as the record presents no other basis for the Steinmetzes' claims, it seems clear at first glance that Coyle & Caron has made its threshold showing that the claims were based solely on its petitioning activity.

The text of the anti-SLAPP statute, however, also limits its scope to a party who asserts that it faces legal action based on its "exercise of its right of petition under the constitution

of the United States or of the commonwealth."  Id.  While the Appeals Court of Massachusetts has interpreted this language to encompass certain third parties assisting in petitioning activity, see, e.g., Plante v. Wylie, 824 N.E.2d 461 (Mass. App. Ct. 2005), the SJC has warned several times, albeit in dicta, that the statute encompasses only parties who "petition their government as citizens, not as vendors of services," Kobrin v. Gastfriend, 821 N.E.2d 60, 64 n.8 (Mass. 2005).

Plante involved two developers who had failed to win a town planning board's approval for their proposed subdivision expansion and brought suit against the attorney for a conservation trust that had opposed the expansion.  824 N.E.2d at 462-64.  The attorney moved to dismiss all claims under the anti-SLAPP statute, and the Appeals Court reversed the denial of the motion, holding that the attorney could "avail himself of the anti-SLAPP statute when the statements that form the basis of the [developers'] claims were made by him as an attorney on behalf of the conservation trust."  Id. at 465.

The Plante court articulated why the anti-SLAPP statute should protect the attorney for petitioning citizens, in addition to the citizens themselves:

> [T]he statute would provide but hollow protection for citizens who wish to exercise their right of petition if statements made by an attorney on their behalf were not covered by the anti-SLAPP statute to the same extent

- 17 -

> as statements made by them directly. . . .
> [S]uits directed against the attorneys who
> represent petitioning parties are just as
> likely to exert a chilling effect on
> petitioning activity as suits directed against
> the parties themselves, and the costs to
> attorneys and their clients if such suits
> cannot promptly be dismissed are just as
> likely to impede the clients' right to
> petition . . . .

Id. at 466.

In other cases, the Appeals Court extended the anti-SLAPP statute's protection to employees assisting in their employers' petitioning activities. See Keegan v. Pellerin, 920 N.E.2d 888, 893 (Mass. App. Ct. 2010) (holding that a security officer of a condominium complex "remains entitled to the [anti-SLAPP] statute's protection because we have held that when a nongovernmental person or entity is the petitioner, the statute protects one who is engaged to assist in the petitioning activity under circumstances similar to those this record reveals"); see also Blanchard v. Steward Carney Hosp., Inc., 46 N.E.3d 79, 85 (Mass. App. Ct. 2016) (holding that the president of a hospital, although "not personally aggrieved by [governmental] agencies' actions and . . . not petitioning them on his own behalf," could nonetheless bring a special motion to dismiss under the anti-SLAPP statute), vacated in part on other grounds, 75 N.E.3d 21.

But casting doubt upon these Appeals Court decisions are repeated statements from the SJC that only those who petition the

- 18 -

government in their status as citizens may avail themselves of the anti-SLAPP statute's special motion provision. In Kobrin, the SJC interpreted the statutory phrase "based on said party's exercise of its right of petition under the constitution" as "restricting the statute's coverage to those defendants who petition the government on their own behalf. In other words, the statute is designed to protect overtures to the government by parties petitioning in their status as citizens." 821 N.E.2d at 64. Under this interpretation, the SJC in Kobrin found that the anti-SLAPP statute was inapplicable to a psychiatrist who was hired by the government to serve as an expert investigator and witness. See id. (noting that the anti-SLAPP statute does not "apply to those performing services for the government as contractors").

While the Appeals Court has subsequently sought to limit Kobrin to circumstances in which the government seeks to petition itself, see Keegan, 920 N.E.2d at 893, the SJC recently clarified that Kobrin should not necessarily be so confined. In Cardno ChemRisk, LLC v. Foytlin, 68 N.E.3d 1180 (Mass. 2017), the SJC suggested that Kobrin could be read more expansively to deny the anti-SLAPP statute's protection to those who do not "petition their government as citizens," but merely as "vendors of services," Kobrin, 821 N.E.2d at 64 n.8. See Cardno, 68 N.E.3d at 1189. "[E]nter[ing] into a 'mere[ly] contractual' relationship to vend [one's] skills and knowledge" may be insufficient to fall within

- 19 -

the scope of the anti-SLAPP statute. Id. at 1189-90 (third alteration in original).

As recently as in Blanchard, the SJC reiterated that "[t]he statute . . . requires a special movant to demonstrate that it was exercising 'its own right of petition' in both the statutory and the constitutional sense." 75 N.E.3d at 29 n.12 (citing Cardno, 68 N.E.3d at 1188-90, and Mass. Gen. Laws ch. 231, § 59H). Although the SJC has not elaborated on this point, we cannot ignore the frequency with which the SJC has commented on the requirement that a party must have exercised "its own right of petition" in order to invoke the protection of the anti-SLAPP statute. In short, the SJC's commentary in Kobrin, Cardno, and Blanchard, juxtaposed with Appeals Court rulings in cases like Plante and Keegan, renders the state law insufficiently clear for us to rule definitively on the applicability of the anti-SLAPP statute to Coyle & Caron.[2]

Thus, although we would otherwise conclude that Coyle & Caron has met its burden of showing that the Steinmetzes' claims are based solely on Coyle & Caron's legitimate petitioning activity, we cannot do so without further guidance regarding the

---

[2] The record indicates that Coyle & Caron's counsel has emphasized his client's status as a third-party vendor of services in an interview with the Boston Globe: "[M]y clients have no dog in this fight. They were not trying to advance or deter the Steinmetzes. They were simply asked to do a job, which they did to the best of their abilities."

applicability of the anti-SLAPP statute to Coyle & Caron. As a prelude to seeking that guidance, we examine the other steps called for by the special-motion inquiry to explain why the guidance we seek will make a difference.

B. Reasonable Basis in Fact or Law and Actual Injury

To meet their burden of showing that the renderings lacked any factual basis, the Steinmetzes rely primarily on an affidavit from their own architect, Can Tiryaki. That affidavit repeatedly states that the Coyle & Caron renderings are "highly inaccurate" and, at one point, that the renderings "have no basis in fact as to the (i) location; (ii) size; (iii) height; (iv) visibility; (v) massing; or (vi) scale of the house." Tiryaki's affidavit makes no response to Coyle & Caron's contentions that it did not receive all of the materials that it had requested from the Steinmetzes to prepare the renderings and that the renderings are subject to that limitation.

Even under the prima facie evidentiary standard that the Steinmetzes concede is constitutionally permissible, the first statement that the renderings are "highly inaccurate" is insufficient to meet the high burden of showing that "no reasonable person could conclude" that there was factual support behind the renderings. Baker, 750 N.E.2d at 962 n.20 (affirming this "no reasonable person" formulation as "a correct statement of the law"). The same is true as to the second assertion that, in six

respects, the renderings had "no basis in fact." The renderings, on their face, plainly had some factual basis, insofar as they depict a house on the Steinmetzes' James Island property; were prepared, at least in great part, on the basis of two-dimensional design plans provided by the Steinmetzes; and were delivered with an express caveat that they were not completely accurate and were based on the available source materials. In short, then, neither we nor the district court need decide any disputed issues of material fact to find that the Steinmetzes failed to make even a prima facie showing that no reasonable person could conclude that the renderings lacked any factual basis.

As a last resort, the Steinmetzes complain that the district court "improperly ignored" the affidavit of Christopher MacFarlane, who attested that Yuka Suganuma had told him, inter alia, that the renderings that she had helped prepare for Coyle & Caron were "inaccurate . . . given the limited information she had." Even if Suganuma had made such statements to MacFarlane, the statements simply acknowledge the limitations in information already disclosed. It is of no import, on this step of the special-motion inquiry, that the district court did not comment on the MacFarlane affidavit.

The Steinmetzes therefore have failed to advance any arguments that might lead a reasonable person to conclude that the

- 22 -

renderings had no factual basis at all.[3]  Simply put, accurate or not, the renderings do not constitute sham petitioning activity. Cf. generally United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965); E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961).  Because the foregoing provides an independently sufficient basis to move us to the next step of the special-motion inquiry, Steinmetz, 2016 WL 4074135, at *8 n.3, we do not reach the issue of whether Coyle & Caron's actions caused actual injury to the Steinmetzes.

C.  Primary Intent of Nonmovants' Claims

Again, "[a] necessary but not sufficient factor" in determining whether the nonmoving party's claims were "not primarily brought to chill the special movant's legitimate petitioning activities" is whether those claims are "colorable or . . . worthy of being presented to and considered by the court." Blanchard, 75 N.E.3d at 38-39 (last alteration in original) (citation omitted).  We need not tarry long on this question, for the negligence, gross negligence, and chapter 93A claims so lack

---

[3]    In reaching this conclusion, we reject the Steinmetzes' contention that the SJC's decision in 477 Harrison Ave. requires us to examine each aspect of the individual renderings for a reasonable factual basis.  That decision merely distinguished one "instance[]" of petitioning activity from another, and does not suggest that courts should further separate each instance of petitioning activity into individual elements.  477 Harrison Ave., 74 N.E.3d at 1248.

a "likelihood of success" as to be "frivolous." <u>Levin</u>, 388 N.E.2d at 1209.

### 1. Negligence and Gross Negligence

The Steinmetzes' negligence and gross negligence claims essentially encompass two different arguments. First, they argue that Coyle & Caron was negligent in creating the renderings at issue. Second, they argue that Coyle & Caron was negligent in allowing one of the draft renderings to be published on Facebook. Both of these arguments fail.

The first argument regarding the allegedly negligent creation of the renderings fails for the reason that the district court stated in alternatively dismissing the claim under Rule 12(b)(6)[4]: Coyle & Caron owed no professional duty of care to the Steinmetzes because the Steinmetzes did not rely on its services. See <u>Steinmetz</u>, 2016 WL 4074135, at *9. Under Massachusetts law, "a professional . . . does not owe a duty of care to [a noncontractual third party] unless it was foreseeable and reasonable for [the third party] to rely on the services provided . . . by the professional, and the professional had actual knowledge that [the third party] was relying on the professional's

---

[4]    In doing so, we neither affirm nor reverse now the district court's alternative rulings under Rule 12(b)(6). Nor do we pass judgment on the nature of the Rule 12(b)(6) inquiry relative to the present inquiry into colorability as described in <u>Blanchard</u>, 75 N.E.3d at 39.

services."  Meridian at Windchime, Inc. v. Earth Tech, Inc., 960 N.E.2d 344, 350 (Mass. App. Ct. 2012) (citing Craig v. Everett M. Brooks Co., 222 N.E.2d 752 (Mass. 1967)).

Here, the Steinmetzes did not allege that they relied on Coyle & Caron's renderings, let alone allege that it was foreseeable and reasonable for them to do so, or that Coyle & Caron had actual knowledge of any such reliance.  In fact, the record makes clear that the Steinmetzes did precisely the opposite of relying on the renderings.  The Steinmetzes vigorously disputed the accuracy of the renderings and declared that it would "simply make[] no sense" for them to rely on them.  We find, therefore, that the Steinmetzes' claim that Coyle & Caron acted negligently in creating the renderings at issue cannot succeed as a matter of law.

The Steinmetzes' second argument -- that Coyle & Caron was negligent in allowing one of its draft renderings to be posted on Facebook -- also fails.  Although the Steinmetzes insist that Coyle & Caron "had a duty to the Steinmetzes to not allow its completely unfounded [r]endering of the Steinmetzes' house to be published on Facebook," they have not cited a single case to support their assertion that Coyle & Caron would owe such a duty. Our own survey of Massachusetts negligence law has likewise yielded no sources that articulate such a duty.  In the circumstances of this case, Coyle & Caron owed the Steinmetzes no duty to ensure

that its draft rendering would not end up on Facebook. Any negligence claim predicated on such a duty lacks any reasonable chance of success.

2. Chapter 93A

In response to the district court's Rule 12(b)(6) dismissal of their chapter 93A claim on the ground that they failed to allege any business or commercial relationship to Coyle & Caron, Steinmetz, 2016 WL 4074135, at *11, the Steinmetzes argue that this reasoning was in error because they say they brought their claims under section 9, not section 11, of chapter 93A, and there is no requirement of privity between the parties for a section 9 suit.

The Steinmetzes are correct that contractual privity is not required to sustain a chapter 93A claim brought under section 9. See, e.g., Maillet v. ATF-Davidson Co., 552 N.E.2d 95, 99 (Mass. 1990). Nonetheless, some business, commercial, or transactional relationship is required even for a claim brought under section 9. See, e.g., Swenson v. Yellow Transp., Inc., 317 F. Supp. 2d 51, 56-57 (D. Mass. 2004) (rejecting suit brought under section 9 because "[i]t is well-established that 'the proscription in § 2 of "unfair or deceptive acts or practices . . . ." must be read to apply to those acts or practices which are perpetrated in a business context'" and, in that case, "there was no relationship between the plaintiffs and the defendants at all prior to the

- 26 -

accident" at issue (citation omitted)). Absent any such relationship, the Steinmetzes' chapter 93A claim is frivolous.

### 3. Defamation

In addition to the three claims discussed above, the Steinmetzes brought a defamation claim, alleging that the "false" and "fraudulent" renderings "have caused, are causing, and will cause" them reputational injury. They further allege that the creation and publication of the renderings were "calculated to, and do, expose Plaintiffs to public scorn, hatred, and ridicule."

Unlike with the claims of negligence, gross negligence, and chapter 93A violation, we cannot conclude that the defamation claim offers no reasonable possibility of a decision in the Steinmetzes' favor. While we have found that the renderings had some factual basis, the complaint adequately alleges facts that, if believed, could lead a reasonable person to conclude that the renderings were nevertheless also based on erroneous extrapolations from their factual basis, resulting in depictions that contain material errors in excess of the margin of possible error claimed. The assertions set forth in MacFarlane's affidavit, in turn, arguably suggest Coyle & Caron's knowledge of at least some of those errors. Further, we decline to find on the present record, as the district court did in assessing the pleadings under Rule 12(b)(6), that the renderings constitute pure opinion beyond

the scope of a defamation claim.  While the issue is close, we cannot say that the defamation claim is not colorable.

This finding leaves (in addition to the certified question we discuss further below) the question of the Steinmetzes' intent in bringing this claim.  Answering that question requires a "totality of the circumstances" inquiry that is better suited for resolution in the first instance by the district court.  See Blanchard, 75 N.E.3d at 39.  We therefore decline to answer that question at this time.

D.  Certification of Applicability of Anti-SLAPP Statute

SJC Rule 1:03 allows us to certify to that court "questions of law of [Massachusetts] which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."  SJC R. 1:03.[5]  This case meets the requirements for certification.

1.  Determinative Question of State Law

The questions of state law raised by Coyle & Caron's special motion under the anti-SLAPP statute are determinative. Under Massachusetts law, as the first step in assessing whether

---

[5]  "Although neither party requested certification, 'we have the discretion to certify questions to the SJC sua sponte.'" Phillips v. Equity Residential Mgmt., L.L.C., 844 F.3d 1, 4 n.7 (1st Cir. 2016) (quoting Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50 n.4 (1st Cir. 2013)).

the district court properly granted the special motion, we must consider whether the anti-SLAPP statute even applies in this case, where the moving party is not the petitioner itself but a third-party contractor hired by counsel to assist in petitioning activity.

If the SJC concludes that third-party contractors in like position to Coyle & Caron fall within the scope of the anti-SLAPP statute, then Coyle & Caron's special motion must be granted as to the negligence, gross negligence, and chapter 93A claims, for the reasons stated above. This threshold inquiry is the precise question that we certify for the SJC's resolution, recognizing that the question presents subparts.

2. <u>No Controlling Precedent and Unclear Law</u>

"[E]ven in the absence of controlling precedent, certification would be inappropriate where state law is sufficiently clear to allow us to predict its course." <u>Ropes & Gray LLP</u> v. <u>Jalbert</u> (<u>In re Engage, Inc.</u>), 544 F.3d 50, 53 (1st Cir. 2008); <u>see also</u> <u>Phillips</u> v. <u>Equity Residential Mgmt., L.L.C.</u>, 844 F.3d 1, 5 (1st Cir. 2016). As earlier discussed, however, the question of whether Coyle & Caron may invoke the protection of the anti-SLAPP statute presents "a close and difficult legal issue" and, in addition, has policy implications that reach beyond the specific case at hand. <u>In re Engage, Inc.</u>, 544 F.3d at 53; <u>accord</u> <u>Showtime Entm't, LLC</u> v. <u>Town of Mendon</u>, 769 F.3d 61, 82 (1st Cir.

- 29 -

2014).  Under these circumstances, we exercise our discretion to certify the question.

We thus certify the following question to the Massachusetts SJC:

> Can Coyle & Caron, a third-party contractor that made submissions to a governmental body for the purpose of assisting in its private client's petitioning activity, avail itself of the special motion provision under chapter 231, section 59H of the Massachusetts General Laws?

We also welcome any additional observations about Massachusetts law that the SJC may wish to offer.

### III.

We hold that if the anti-SLAPP statute applies to Coyle & Caron, then the negligence, gross negligence, and chapter 93A claims alleged in this suit must be dismissed pursuant to Coyle & Caron's special motion, leaving only the defamation claim for further consideration by the district court under the special motion.[6]

The Clerk is directed to forward to the Massachusetts SJC, under the official seal of this court, a copy of the certified question and this opinion, along with copies of the parties' briefs, appendix, and all supplemental filings under Rule 28(j) of

---

[6]    Again, we reserve judgment on the district court's alternative Rule 12(b)(6) rulings, which may be mooted in large part depending on the guidance we receive from the SJC.

the Federal Rules of Appellate Procedure.  The panel retains jurisdiction over this appeal.

So ordered.